## DAWSON, etc., *v.* ACME EVANS, INC.

[No. 17,583. Filed November 18, 1947. Rehearing denied December 19, 1947. Transfer denied January 15, 1948.]

*Hall Cochrane,* of Indianapolis, attorney for appellant.

*Murray Mannon* and *Fairchild & Stewart,* all of Indianapolis, attorneys for appellee.

DRAPER, J.—The appellant brought this action in the Marion Superior Court, by next friend, to recover damages for personal injuries sustained by accident arising out of and in the course of his employment by appellee.

The complaint alleges that appellant, then 15 years of age, was injured while operating a freight car pulling device at night. It alleges common law negligence, as well as facts showing that appellant was illegally employed and permitted to work in violation of various

of the provisions of the Compulsory Education Act, the Factory Act, etc.

The appellee demurred to the complaint on the ground that exclusive jurisdiction of such a case is vested in the Industrial Board, whether the minor was lawfully or unlawfully employed. The demurrer was first sustained but later, on appellant's motion, was reconsidered and overruled. The appellee then took a change of venue from the regular judge and moved the reconsideration of the ruling on demurrer. Appellant moved to strike out appellee's motion to reconsider, which was overruled; the special judge sustained appellee's motion to reconsider, and sustained the demurrer. Error is predicated on those rulings by the special judge.

The real question seems to us to be whether a special judge has the right to reconsider the decisions of a prior judge in the same case. Dean Gavit in his Pleading and Practice, Vol. I, § 137, p. 652, comments as follows:

> "*Change of Ruling on Demurrer.* If a trial court has overruled a demurrer the ruling constitutes a decision upon which the parties are entitled to rely as to the point raised during the subsequent proceedings in the case. Thus if the same point arises later the trial court should not rule on the point contrary to the ruling on demurrer. So long, however, as a case is pending a trial court has the power to modify or vacate a previous ruling, and it is perfectly proper for good cause shown for the trial court to reconsider a previous ruling, vacate it, and make a modified or contrary ruling. . . ."

In *State ex rel. Williams Coal Co.* v. *Duncan, Judge* (1937), 211 Ind. 203, 6 N. E. 2d 342, our Supreme Court, actually considering, it is true, a motion for change of venue and not a demurrer, said:

"It often happens that the judge who originally has jurisdiction is required to rule upon a question of law, presented by demurrer or other pleading, and that thereafter, upon a change of judge, the same questions are presented during the trial. The ruling of the original judge does not become the law of the case so as to bind the judge who later has jurisdiction, nor, in passing upon the question when again presented, does he review the ruling of the former judge. His authority and his duty require that he exercise his judicial discretion as though the matter were presented for the first time."

Although insisting the special judge had no right to reconsider and change the ruling on demurrer, the appellant concedes him the right to refuse to adhere to his predecessor's ruling if a similar question of law was later otherwise presented, such as by a motion for a directed verdict. It would seem to us that a judge who believes a ruling on demurrer by his predecessor was erroneous should not be required to put the parties to the expense of a trial, and occupy the time of the court for that purpose, well knowing in advance that he would not find for the plaintiff or permit a verdict favorable to the plaintiff to stand. We think the special judge was not *required* to reconsider the demurrer, but he had all the power and authority to reconsider and change the ruling, which was interlocutory in its nature, as did his predecessor. Nevertheless, it is an authority which should be cautiously exercised. See *Peterson* v. *Hopson* (1940), 306 Mass. 597, 29 N. E. 2d 140, 132 A. L. R. 1, Anno. 14.

The Workmen's Compensation Act of 1915, in its definition of "employee," included minors, but was silent as to whether they were to be considered employees if illegally employed. *New Albany Box, etc.*,

*Co.* v. *Davidson* (1920), 189 Ind. 57, 125 N. E. 904, arose under that Act, and it was therein held that a 15 year old boy illegally employed was not deprived of his common law action for injuries, since the employment referred to in the Act meant "lawful" employment, although it did not expressly say so. Cited with approval in the opinion are cases grounded on the proposition that the right of the employer to pay or of the employee to receive compensation are in their last analysis a matter of contract; an agreement violative of a positive statute cannot become a valid contract; a minor child cannot be deemed to have consented to come under the Act and it, therefore, neither binds the minor nor protects the employer. *Midwest Box Co.* v. *Hazzard* (1925), 195 Ind. 608, 146 N. E. 420, involved a 15-year old girl illegally employed, and our Supreme Court reaffirmed its holding in the Davidson case.

In 1919 the definition of "employee" was changed to include only those minors who were "lawfully" in the service of another, and the same language was re-enacted in the amendment of 1929. In cases arising under those amendments it was uniformily held that the compensation law did not govern in cases where a minor was unlawfully employed; see *e.g.*, *In re Stoner* (1920), 74 Ind. App. 324, 128 N. E. 938; *Driscoll* v. *Weidely Motors Co.* (1921), 77 Ind. App. 10, 133 N. E. 12; *In re Morton* (1922), 79 Ind. App. 5, 137 N. E. 62; and that a minor unlawfully employed could resort to a common law action, *Ping* v. *Indianapolis Soap Co.* (1934), 206 Ind. 287, 184 N. E. 903.

In 1933 the legislature made significant changes in the definition of the word "employee." The word "lawfully" was omitted; minor employees were made of full age for all purposes under, in connection with, or

arising out of the Act; the benefits payable to a minor under 16 years of age, as was appellant, illegally employed or permitted to work, were doubled; and it was provided that the rights and remedies therein granted to a minor subject to the Act on account of personal injury or death by accident should exclude all rights and remedies of such minor, his parents, personal represenatives, dependents, of next of kin at common law, statutory or otherwise on account of such injury or death. See Acts 1933, ch. 243; § 40-1701 (b), Burns' 1940 Replacement.

Thereafter, in *Isaak Walton League* v. *Jenkins* (1937), 103 Ind. App. 274, 5 N. E. 2d 669, and *Dumes* v. *Deckard* (1938), 105 Ind. App. 674, 17 N. E. 2d 481, this court sustained an award of double compensation under the foregoing section on account of the death of minors unlawfully employed, but whether the Industrial Board had exclusively jurisdiction of such cases was not considered or decided in either of them.

We cannot agree that the language of the 1933 amendment serves only to give the minor employee a choice of remedies. The legislature clearly intended to bring minors unlawfully employed within the provisions of the Act, and to foreclose all other remedies. More positive language to accomplish that purpose could hardly have been employed. To digest the statutes of the various states and the decisions thereunder, and thus trace the modern trend of legislative action and judicial thought would unduly extend this opinion. Such is well done, however, in Schneider on Workmen's Compensation, Vol. 4, Perm. ed., § 1177 *et seq.*, an examination of which discloses that following decisions which tended to exclude minors unlawfully employed

from the benefits of the Act, the law of many states have been amended, by the use of language much like that employed in the 1933 amendment, to bring illegally employed minors under the protection of the Act, and thus free them from the hazards and uncertainties of common law actions. The attitude of the courts toward such legislation, and its effect upon the previously declared public policy of a state, is well illustrated in *Landry* v. *E. G. Shinner & Co., Inc.* (1931), 344 Ill. 579, 176 N. E. 895.

Apparently to avoid the effect of *Ping* v. *Indianapolis Soap Co., supra,* insofar as it held that a non-resident infant did not come within the provisions of the Compulsory Education Act, the legislature by ch. 51, Acts 1935, passed a supplemental act concerning school attendance and the employment of minors. That act repeals all laws in conflict, and the appellant insists it so far repealed § 40-1701 (b), *supra,* that appellant's right to maintain a common law action, and particularly his right to proceed under § 28 of the Compulsory Education Act, being § 28-528, Burns' 1933, was "reinstated."

We cannot agree. A repeal by implication is not favored. It results only when the intention of the legislature is clear, and where the later act is so repugnant to and inconsistent with another act that it must be assumed the legislature did not intend both acts to stand. *County Dept. of Pub. Welfare* v. *Nichols' Estate* (1945), 223 Ind. 467, 62 N. E. 2d 146. If possible, all must be construed together so as to harmonize and give effect to each. *In re Marshall* (1947), 117 Ind. App. 203, 70 N. E. 2d 772, "But, if the two are repugnant in any of their provisions, the later act, without any repealing clause,

operates to the extent of the repugnancy as a repeal of the first; and even when two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new. provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act." *DeHaven* v. *Municipal City of South Bend* (1937), 212 Ind. 194, 198, 7 N. E. 2d 184.

Applying those rules, it seems apparent that by the 1933 amendment, [§ 40-1701 (b)] the legislature did not mean to repeal any of the child labor laws of this state. The very language of the amendment negatives that idea,. for it provides that double compensation shall be paid in certain cases where a minor is employed, required, suffered or permitted to work *in violation* of any such. It is equally clear that the legislature did not intend by later legislation, including Acts 1935, ch. 51, to strike down any of the provisions of the 1933 amendment. The legislature clearly intended that the Compensation Act should be exclusive within the scope of its operation, and that § 40-1701 (b), should govern and control in the case of all employed minors when same would control in the case of adults. Thus, the acts relied upon by the appellant, including § 38-528, are still effective, but they can apply only in that portion of the field unoccupied by the Compensation Act, such as in cases where the employee or his employer have rejected the act; where the employment is casual and not in the course of the regular business of the employer; where the employment is included in one of those specifically exempted from the operation of the Compensation Act; and the like.

We conclude that in this case only the rights and remedies furnished by the Compensation Act were

available to the appellant, and the demurrer was, therefore, properly sustained.

Judgement affirmed.

NOTE.—Reported in 75 N. E. 2d 553.