NEW YORK CENTRAL RAILROAD CO. *v.* PUBLIC SERVICE COMMISSION OF INDIANA ET AL.

[No. 29,493. Filed January 27, 1958.]

*Marvin A. Jersild, Dale McAllister,* both of Chicago, Illinois, and *Jerdie D. Lewis,* of Terre Haute, for appellant.

*Edwin K. Steers,* Attorney General, *Frank E. Spencer* and *Arthur H. Gemmer,* Deputy Attorneys General, for appellee.

LANDIS, J.—This appeal was taken from a judgment of the Hendricks Circuit Court denying relief to appellant-railroad which had brought an action in such court to vacate and set aside an order of appellee-Public Service Commission requiring appellant to provide a flagman (or, at appellant's election, flasher lights) at a railroad crossing in the town of Brownsburg, Hendricks County, Indiana.

Appellant first contends on this appeal that the decision of the lower court was contrary to law in finding appellee-commission had jurisdiction of the subject-matter, as the regulation of crossings in towns is under the exclusive jurisdiction of town boards rather than

the Public Service Commission. Appellee asserts jurisdiction under Burns' §55-2016 to §55-2019, 1951 Replacement, Acts of 1915, ch. 49, §§1-4, §55-2016 thereof providing:

> "The public service commission of Indiana is hereby authorized and empowered to require that all persons, firms or corporations owning or operating any railroad . . . within this state shall, at all public crossings where the view of approaching trains is obstructed, if said persons, firms or corporations are unable to remove said obstructions as herein provided, equip such public crossings with a flagman or an automatic gong or bell so as to warn the traveling public of an approaching car or train."

Appellant, however, contends that pursuant to Burns' §48-301, Acts of 1909, ch. 152, §6, the town board of Brownsburg, Indiana, previously passed an ordinance requiring appellant railroad to install an alarm or signal at said crossing in question (which was admittedly not complied with by appellant railroad) and that exclusive jurisdiction over crossings within incorporated towns is vested in the town board by virtue of said statute, viz.:

> "The board of town trustees shall have the following powers:
>
> . . . . . .
>
> "Fourteenth. . . . To require persons or corporations owning or operating railroads to construct proper warning signs at street railroad crossings, or any of them; to require any railroad company to use, maintain and operate at any street crossing of its tracks considered to be dangerous, and held so to be by the board of trustees in such town, electric gongs or alarm signals that will announce the approach of trains from any direction required; and to require such corporations or persons operating or owning railroads to construct and maintain gates, with men in charge, or keep flagmen at any railroad street crossing or cross-

ings within such town limits when such crossing or crossings are deemed dangerous and held so to be by the board of trustees. . . ." (Burns' §48-301, 1950 Replacement, Acts of 1909, ch. 152, §6.)

We are unable to agree with appellant's contention that under the above statutes a town board has exclusive jurisdiction over the matter of requiring watchmen or signal devices at crossings within such town. In the first place, appellant's statute passed in 1909, is an earlier statute than the one relied on by appellee, which was enacted in 1915. Furthermore, there is nothing in the Act of 1909 indicating it was intended to be exclusive, whereas the later Act of 1915 purports to apply "at all public crossings where the view of approaching trains is obstructed." Under the Act of 1909 the town board initiates the action, whereas under the 1915 Act "any five or more citizens of this state may petition said commission . . .," and it should also be observed that under the two statutes the grounds for requiring watchmen or signals are somewhat different. We should not indulge in the presumption that the statutes are inconsistent when validity can be accorded to each as is true in the case at bar.[1]

It should be noted that appellant has not contended that the order of appellee-commission requiring appellant "to provide [a] flagman [or] at [appellant's] election . . . flasher lights" was invalid solely as to flasher lights, because under the provisions of Burns' §55-2016 the commission is limited to requiring "a flagman *or an automatic gong or bell.*" No opinion is accordingly expressed as to that portion of the com-

---

1. See: *Dawson* v. *Acme Evans* (1948), 118 Ind. App. 49, 75 N. E. 2d 553; *The State* v. *Smith* (1877), 59 Ind. 179.

mission's order pertaining to flasher lights under the above statute.

Appellant next contends that Burns' §55-2016 to §55-2019 relied upon by appellee has been superseded by Burns' §55-2012 and §55-2013, 1950 Replacement.[2] However, an examination of the latter sections reveals that they have solely to do with "extra-hazardous grade crossings" which are expressly limited to crossings of *state highways* and steam or interurban railroads at grade. The "extra-hazardous" statute makes no particular reference to obstructed crossings nor does it apply to any crossings unless state highways are involved. We certainly cannot reasonably conclude that the leigislature, in making provision for warning signals at *generally unsafe crossings* of *state highways* and railroads, thereby intended to repeal by implication statutes providing for warning signals *at obstructed crossings* of *all highways* with railroads. If possible, all statutes should be construed together so as to harmonize and give effect to each,[3] and we find no overriding conflict between the "obstructed crossing statute" relied on by appellee (Burns' §55-2016 to §55-2019) and the "extra-hazardous grade crossing statute" cited by appellant (Burns' §§55-2012,

2.  Burns' §55-2012 provides in substance:

"The public service commission shall have the power and it shall be its duty, upon proper petition and hearing, to declare as extra hazardous any grade crossing in this state, which said commission shall find to be of such a character as that the safety of the users of such highway requires additional warning signals than those provided by chapter 242 of the Acts of the General Assembly of 1913. . . ." (Acts 1931, ch. 89, §1, p. 255; 1933, ch. 61, §1, p. 427; 1935, ch. 234, §1, p. 1230.)

Burns' §55-2013 provides:

"The term 'grade crossing' as used in this act [§§55-2012—55-2015] shall be construed to mean a crossing of a steam or interurban railroad and a state highway at grade." (Acts 1931, ch. 89, §2, p. 255.)

3.  See Note 1.

55-2013). There is accordingly no repeal by implication as contended by appellant.

Appellant next contends that if the town board and the Public Service Commission had concurrent jurisdiction over crossings in incorporated towns, that the town board having first acted by passing an ordinance requiring warning signals, the appellee Public Service Commission does not now have jurisdiction to proceed, citing *State ex rel. Ferger* v. *Circuit Ct.* (1949), 227 Ind. 212, 84 N. E. 2d 585; and *State ex rel. Poindexter* v. *Reeves* (1952), 230 Ind. 645, 104 N. E. 2d 735.

These cases cited by appellant involved, however, a conflict between courts of concurrent jurisdiction and recognized the well settled rule that *where one of two courts* of concurrent jurisdiction acquires jurisdiction of the subject-matter and the person in a particular case, the jurisdiction becomes exclusive. As stated in *State ex rel.* v. *Madison Circuit Court* (1923), 193 Ind. 20, 27, 138 N. E. 762, 765, "Proper and orderly administration of the laws compel *these courts* to thus observe the rights of each other, in order to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of process." (Emphasis supplied.)

Neither the Town Board of Brownsburg, Indiana, nor the Public Service Commission of Indiana is a court, and the foregoing concepts of jurisdiction do not apply to the duplicity or overlapping of agencies or departments of the government, as is presented in this case. Appellant's contention is accordingly untenable in this respect.

Appellant next contends the obstructive view statute violates respectively Art. 1, §23 and Art. 3, §1, of the Indiana Constitution by providing an arbitrary

classification of crossings requiring protection and by failing to provide a proper standard for the Public Service Commission.

Art. 1, §23 forbidding the granting of special prvileges and immunities is not violated by a statute which places obstructed crossings in a different category from crossings which are not obstructed. It is a reasonable classification in the interest of public safety to require railroad companies to furnish watchmen or signal devices at obstructed crossings which are not required at crossings where the view is clear. See: *Snyder* v. *State* (1934), 206 Ind. 202, 188 N. E. 777; *Koplovitz* v. *Jensen* (1926), 197 Ind. 475, 151 N. E. 390.

Art. 3, §1, providing for the separation of powers into legislative, executive and judicial branches, is not violated by a statute authorizing the Public Service Commission to require watchmen or signal devices at an obstructed crossing without spelling out more in detail what an obstructed crossing is. The cases of *Benton County Council* v. *State ex rel. Sparks* (1946), 224 Ind. 114, 65 N. E. 2d 116, and *Kryder* v. *State* (1938), 214 Ind. 419, 15 N. E. 2d 386 (appeal dismissed, 1938), 305 U. S. 570, 83 L. Ed. 359, 59 S. Ct. 154, cited in appellant's brief, recognize it is not an improper delegation of legislative power for the legislature to delegate to a board or officer the determination of *what is a reasonable rate or charge or salary* under the particular facts. And if the legislature can delegate to a board or commission the fixing of a reasonable rate or charge, it is certainly difficult to see why it may not delegate to the Public Service Commission the function of determining what is or is not an obstructed crossing under the particular facts.

Appellant further contends that the penalties provided for in Burns' §55-2016 to §55-2019, 1951 Replacement, render the statute unconstitutional under the authority of the case of *Town of Walkerton* v. *N. Y. C. and St. L. R. R. Co.* (1939), 215 Ind. 206, 18 N. E. 2d 799. It is not necessary for us to consider the validity of appellant's argument, for while the *Town of Walkerton* case directly involved the collection of penalties from the railroad for violation of the ordinance, no penalties whatever are involved in the instant case before us on appeal. Any question raised by appellant with reference to penalties is therefore purely hypothetical and moot.

Appellant's last contention is that the evidence in this case conclusively shows the conditions at the instant crossing in Brownsburg, Indiana, do not warrant the installation of a watchman or flasher signals. While we cannot weigh the evidence, we find that contrary to appellant's contention, there is credible evidence in the record indicating the following obstructions and conditions at the Grant street crossing: (a) A 186-feet-long grain elevator is built parallel and immediately adjacent to appellant's railroad tracks at the southeast quadrant of the crossing, obstructing the view; (b) Between the grain elevator and the tracks is a railroad siding on which railroad cars are sometimes allowed to stand, obstructing the crossing; (c) In the northwest quadrant of the crossing is a sheet metal warehouse and two large oil storage tanks eighteen feet high; (d) Residential dwellings overlap east of the crossing making the approach blind from the south within a couple of hundred feet of the crossing, and cars from the south would have to be out on tracks to see a train from the east; (e) A housing development is proposed in the northeast quadrant

of the crossing; (f) The crossing is not at right angles, but persons crossing from the south must look backwards at an angle of 30° to see a train approaching from the east; (g) Grant street has the most traffic of any crossing in Brownsburg, and a 24-hour traffic count revealed six trains, 164 children, 43 adults, 128 bicycles, and 1,272 vehicles, traveled over the same, whereas appellant's-railroad's own evidence showed 1,557 vehicles and 8 trains used the crossing in another 24-hour period; (h) A number of witnesses testified, without objection, the view of the crossing was obstructed.

Appellant has failed to demonstrate any error on the part of the lower court.

Judgment affirmed.

Emmert, C. J., and Achor, Arterburn and Bobbitt, JJ., concur.

NOTE.—Reported in 147 N. E. 2d 547.

