PORTER MEMORIAL HOSPITAL ET AL. *v*. ROBERT E. HARVEY.

[No. 871A161. Filed March 7, 1972.]

*Roger K. Claudon, Conover, Claudon and Billings,* of Valparaiso, for appellants.

*Glen J. Tabor, Blachly, Tabor & Bozik,* of Valparaiso, *Nelson G. Grills, Collins, Grills & Suess,* of Indianapolis, for appellee.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS—This is an appeal from a summary judgment entered against defendant-appellant, Porter Memorial Hospital (the

Hospital), as a result of a suit by plaintiff-appellee, Dr. Robert E. Harvey (Harvey), to enjoin the Hospital from denying Harvey the use of the Hospital's facilities for the general practice of medicine, exclusive of major surgery.

On November 6, 1969, the Hospital Trustees adopted certain Medical Staff By-Laws for the appointment and retention of members of its medical staff. Included in these By-laws is the requirement that medical staff applicants must have satisfactorily completed at least "one year of internship in an approved hospital"[1] (the Rule).

Completion of such an internship program is not a requirement for the receipt of an unlimited license to practice medicine in the State of Indiana.

On November 17, 1969, Harvey, a resident physician of Porter County, applied for an appointment to the medical staff of the Hospital. Prior to this application, Harvey had been practicing medicine in Indiana for twenty-five years pursuant to an unlimited license to practice medicine, osteopathy, surgery, and obstetrics issued by the Indiana State Board of Medical Registration and Examination on April 26, 1945. During that time, he wrote several medically oriented articles and attended numerous conventions and seminars. He did not serve a one-year internship at any time following his graduation from medical school.

---

1. In part, these by-laws require:
   Article III, Section 1:
   e. Satisfactory completion of at least one year of internship in an approved hospital.
   Article XI, section 4:
   An "approved" hospital shall mean one which meets the following minimum standards:
   a. Provision for training in surgery, obstetrics, internal medicine and pediatrics.
   b. A well organized and active out-patient service.
   c. The internship program in such a hospital must include bedside teaching, consisting of regularly organized ward rounds with systematic instruction of the intern by members of the attending staff and formal clinical pathological conferences, including departmental conferences, x-ray conferences, record and fatality conferences and Journal Club conferences.

The Hospital, a tax-supported institution, by action of its board of trustees denied his application on May 15, 1970 for the sole reason that Harvey had not completed a one-year internship program as required by Article III, Section 1-e of the By-Laws, Rules and Regulations for the Medical Staff of the Hospital.

A substantial number of Harvey's patient's are taxpayers or dependents of taxpayers of Porter County. Consequently, the Hospital's facilities are necessary for their health and well-being under his care as the physician of their choice. Had Harvey's application to the staff of the Hospital been approved, he would have been permitted to use the Hospital's facilities for the practice of general medicine excluding major surgery.

After denial of his application, Harvey brought this action to enjoin the Hospital's enforcement of the Rule. He alleged that such a restriction, if allowed to continue, would render his practice of general medicine ineffectual and that he had no adequate remedy at law.

The Hospital, by counterclaim, sought a declaratory judgment that the Rule was reasonable.

Harvey filed a Motion for Summary Judgment with his accompanying Affidavit. The Hospital then filed a Motion for Speedy Hearing on the Motion for Declaratory Judgment and for Special Findings of Fact and Conclusions of Law thereon. It also requested permission to submit testimony during the hearing on the Motion for Summary Judgment so that the trial court would have more than the pleadings and affidavits on which to base its decision. While no pre-trial conference was held, the trial court did permit testimony, but limited its presentation in the following Order:

"On the basis of evidence presented, the court also rules that the defendant may adduce such evidence at such hearing as may relate to the differences between the rules of the Porter Memorial Hospital and such rules as were construed by the Appellate Court in McCray Memorial

Hospital VS Hall, the reasonableness of said rules as they may relate to the facts in this case, or such other matters as may relate to the rules and regulations of Porter Memorial Hospital as they apply to this cause: Plaintiff may adduce such rebuttal evidence as plaintiff may see fit to adduce at such time."

At a subsequent hearing the Hospital introduced expert medical testimony by several physicians who described at some length the virtues and advantages of completing a one-year internship program. The court, after hearing evidence and arguments as limited by its Order, entered Special Findings of Fact and Conclusions of Law.

The court specifically found that the Hospital denied Harvey's application for the reason that he lacked one of the qualifications for staff privileges set out in the Medical Staff By-Laws, to-wit: the completion of one year of internship, and that the evidence did not disclose any inaccurate or misleading statements in Harvey's application, nor did it establish that he had been guilty of dishonorable or unprofessional conduct or that he was incompetent to practice medicine. The court then concluded that the Rule was unreasonable and that the denial of Harvey's application was arbitrary and capricious and a violation of IC 1971, 16-12-23-1, Ind. Ann. Stat. § 22-3314 (Burns 1964). The court then granted the injunction and the Hospital now appeals.

## ISSUES

ISSUE ONE. Was there a material issue of fact as to whether the Rule adopted by the Hospital is a reasonable one as applied to Harvey?

ISSUE TWO. Was the Hospital denied a fair trial because of the trial court's Order limiting the scope of evidence in the hearing on the Motion for Summary Judgment?

As to ISSUE ONE, the Hospital argues that the evidence introduced conclusively proved that a one-year internship is

required to objectively evaluate a physician's competency. This evidence therefore created an issue of material fact, thereby rendering the summary judgment improper. The trial court should have granted a trial on the Hospital's Counterclaim for Declaratory Judgment that the internship requirement of the Hospital was a reasonable rule within the language of IC 1971, 16-12-23-1, Ind. Ann. Stat. § 22-3314 (Burns 1964).

Harvey replies that the Rule is more stringent than the requirement to practice medicine in the state of Indiana. Since the Hospital is a tax-supported institution, its rule is unreasonable under § 22-3314, *supra*.

As to ISSUE TWO, the Hospital asserts that the trial court was bound to admit all evidence in the hearing on the Motion for Summary Judgment that would have been admissible at a full trial. Since the trial court limited the scope of the evidence, the Hospital was prevented from establishing a material issue of fact and therefore denied a fair trial.

Harvey points to Rule TR. 56 which permits a trial court to limit the presentation of evidence in a hearing on a motion for summary judgment.

## DECISION

ISSUE ONE. It is our opinion that Summary judgment was properly granted because the Rule adopted by the Hospital is unreasonable as a matter of law.

The lawgivers of this state have granted tax-supported hospitals the authority to establish reasonable rules and regulations concerning the use of its facilities by members of its medical staff. Ind. Ann. Stat. § 22-3314 (Burns 1964) provides:

"HOSPITAL RECEIVING COUNTY FUNDS—USE BY ALL TAXPAYERS AND PHYSICIAN OF CHOICE. —Any hospital supported by funds provided by a county unit of government authorized to levy taxes shall provide the use of its facilities to all taxpayers within its jurisdic-

tion and to dependents of such taxpayers under the care of the physician of their choice *if such physician possesses a license to practice medicine without limitations* issued by the Indiana state board of medical registration and examination: *Provided,* that the provisions of *this act* [section] *shall not deprive* the governing board of *such a hospital of the right to adopt* and enforce *reasonable rules and regulations concerning the use of* such hospitals and *its facilities* by such physicians: Provided, further, that *denial of* the use of such hospital and *its facilities to such a licensed physician* who is a resident of the county *shall be prima facie evidence of a violation of this act* [section]." (Emphasis supplied.)

(hereinafter referred to as the 1961 Statute).

The stated purpose of the 1961 Statute is to require that a tax-supported hospital accommodate all taxpayers within its jurisdiction and the physician of their choice if that physician possesses an unlimited license to practice medicine granted by the State of Indiana. That this is the essential thrust of the Statute is indicated by the specific language stating "if such physician possesses a license to practice medicine without limitations" and by the proviso that the denial of a hospital's facilities to a licensed physician is "prima facie evidence of a violation of this act." No higher standard of competency is expressed or contemplated.

Having firmly established the right of taxpayers to use such a hospital under the care of the licensed physician of their choice, the 1961 Statute modifies this right by recognizing the need for reasonable rules and regulations as to the *use* of such hospital and its facilities by such physicians.

While tax-supported hospitals are allowed by the 1961 Statute to make reasonable rules for the use of their facilities. they do not possess the power to create *any* rule. *McCray Memorial Hospital* v. *Hall* (1967), 141 Ind. App. 203, 226 N. E. 2d 915. Tax-supported hospitals are operated by public funds in the public interest. The managing authorities of such hospitals act in a fiduciary capacity

for the public, thereby subjecting their rule-making power to judicial and legislative supervision. *Dean* v. *State of Indiana ex rel Board of Medical Registrations, etc.* (1953), 233 Ind. 25, 116 N. E. 2d 503. Thus a public hospital may not exclude a physician or surgeon from its staff by unreasonable, arbitrary, or discriminatory rules and regulations.

Our concern, then, is whether the Rule adopted by the Hospital is unreasonable in view of the intent and specific wording of the 1961 Statute. This is not a novel question in Indiana. In 1967 *McCray Memorial Hospital* v. *Hall, supra,* considered the exact question of whether a hospital rule requiring a one-year internship as a prerequisite to staff membership was an unreasonable and arbitrary rule. In interpreting such a rule to violate the 1961 Statute, the court used this language:

> "[T]he rule of the hospital was not reasonable in requiring more rigid training than that required by the laws of the State of Indiana with reference to the examination and admission of an individual to have a general license to practice medicine in the State of Indiana; that *the attempt on the part of the hospital to establish more stringent rules for practice within its local jurisdiction than that required for a general license to practice medicine in the State of Indiana exceeded the rule of reasonableness.*" (Emphasis supplied.)

We can find no basis for distinguishing *McCray* from the case before us.

The strict wording of the 1961 statute and the *McCray* case interpreting it probably cast doubt on rules and regulations in any way limiting admission of a physician holding an unlimited license to the staff of a tax-supported county hospital. Perhaps to overcome this sterile effect the 1971 session of the Legislature enacted IC 1971, 16-12.1-5-1, Ind. Ann. Stat. § 22-3141 (Burns 1971), which attempts to set out with particularity the content of "reasonable standards and rules and regulations." It says:

"*All physicians possessing an unlimited license to practice medicine* and surgery, issued by the Indiana State Board of Medical Registration and Examination, *shall be eligible for membership* on the medical staff of the hospital, *subject* however, *to* the power of the board to establish and enforce *reasonable standards and rules and regulations* to determine qualifications for admission to the medical staff and to practice in the hospital and reasonable rules and regulations for retention of such membership and for the granting of medical staff privileges within the hospital. *Such reasonable standards and rules and regulations* shall not discriminate against practitioners of any school of medicine who hold such an unlimited license but *may, in the interest of good patient care, and without limiting the generality of the foregoing, consider the applicant's postgraduate medical education, training and experience and any other facts concerning the applicant which may reasonably be expected to affect his professional competence.* The medical staff shall originate by laws and rules and regulations for self government which shall be subject to the approval of the board. Such by-laws shall provide for a hearing for a physician whose medical staff membership the medical staff has recommended for termination." (Emphasis supplied.)

(hereinafter referred to as the 1971 Statute).

In our opinion, the 1971 Statute supplements the 1961 Statute by specifying a standard ("good patient care") and some of the criteria for hospitals to consider when adopting reasonable rules and regulations relating to staff eligibility. These Statutes must be construed in *pari materia* so as to harmonize and give effect to each. *New York Central Railroad Co.* v. *Public Service Commission of Indiana* (1957), 237 Ind. 544, 147 N. E. 2d 554. In doing so we cannot overlook that the 1971 Statute again repeats the directive that a physician possessing an unlimited license to practice medicine shall be eligible for membership on a medical staff. Any doubt that may have existed whether a tax-supported county hospital could deny a licensed physician membership on its staff due to demonstrated professional incompetence was dispelled by the adoption of the references

in the 1971 Statute to education, training and experience which are in large part subjective factors indicative of the professional competence of a particular physician. Thus, a physician with an unlimited license may be denied admission for a variety of reasons relating to *his* professional competence.

The granting or denial of an application to a hospital's medical staff may then depend upon an investigation into the subjective facts of a particular applicant holding an unlimited license, taking into consideration his entire record. A standard or test which labels all such physicians incompetent who lack a particular qualification may be arbitrary and capricious.

As the only reason given by the Hospital for excluding Harvey from its staff was his failure to have completed a one-year internship program, the Rule embracing such a requirement is arbitrary and unreasonable within the express language of both the 1961 Statute and the 1971 Statute, and, further, is contrary to the specific holding in *McCray Memorial Hospital* v. *Hall, supra*. The overall effect of the Hospital's rule is to gather all medical fish in the same net, competent and the incompetent ones alike.

Recognizing there is a broad sweep to the language of the 1971 Statute which says, "such reasonable standards and rules . . . may, in the interest of good patient care, and without limiting the generality of the foregoing, . . ." does not mean that in the interest of "good patient care" a rule and regulation may nullify the specific directive of both the 1961 Statute and the 1971 Statute that a physician possessing an unlimited license is eligible for membership on a medical staff. The words of the 1971 Statute, "and any other facts concerning the applicant which may reasonably be expected to affect his professional competence," indicate subjective tests should be applied in determining a particular physician's competence.

The 1971 Statute, as we interpret it, also contemplates that objective tests relating to "post-graduate medical education, training and experience" may be reasonable. Such objective tests may not however be so broad as to supplant the central requirement to practice medicine in the State of Indiana and for eligibility on the staff of tax-supported county hospitals, i.e., an unlimited license issued by the Indiana State Board of Medical Registration and Examination. A fair interpretation of the 1971 Statute is that rules and regulations are reasonable as being in the interest of good patient care if they relate to a combination of limited objective tests designed to fairly appraise a physician's competence. They would apply to both general practitioners and specialists. There is sufficient latitude within the concept of reasonableness for a hospital to adopt rules and regulations creating limited objective standards for determining competency without creating barriers which in effect add a new prerequisite to the granting of an unlimited license to practice medicine.

By statute many states require a one-year internship as a condition to an unlimited medical license. Such statutes have been found to be constitutional in Wisconsin, *Nickley* v. *Skemp* (1931), 206 Wis. 265, 239 N. W. 426; Florida, *Parmerter* v. *Osteopathic General Hospital* (Fla. 1967), 196 So. 2d 505, and Louisiana, *Lindley* v. *Michigan Mutual Liability Co.* (La. 1963), 156 So. 2d 313.

By a process of inductive reasoning the Hospital contrives an argument that only by the adoption of this one objective standard, to wit, a one-year internship, can professional competence be truly evaluated. It is only by means of such an internship, it is argued, that a prospective staff member will learn the necessary techniques for the use of hospital facilities and develop habits of concurrent self-evaluation necessary for professional competence. Further, recent Indiana decisions indicate tax-supported hospitals may no longer be sheltered by the doctrine of governmental immunity. As a result the

Hospital expresses concern that inability on their part to require additional training as a prerequisite to staff membership exposes them to liability for acts of incompetent staff members.

The Hospital's eloquent plea for high quality medical care is a fine sample of the advocate's art. Unfortunately it attempts to engraft onto the 1961 and the 1971 Statutes a new dimension of competence. "Reasonable standards" and "reasonable rules and regulations" cannot be given such a degree of elasticity as to defeat positive language determining the level of competence required for membership on a hospital staff, i.e., an unlimited medical license.

We dispose of the Hospital's concern as to exposure to liability for incompetence, if any, of its staff members on the basis this is a matter for legislative action.

The essence of the Hospital's position is simply a disenchantment with the existing law. They must beat their drums in another forum.

The Hospital makes reference to *Hamilton County Hospital* v. *Andrews* (1949), 227 Ind. 217, 84 N. E. 2d 469, in support of its interpretation of the two Statutes under consideration. This case is easily distinguished in that it concerns only the power of a hospital to make reasonable rules concerning the admission of surgeons to its medical staff. The surgical privilege was not requested by Harvey, and our decision is limited to the narrow facts of the case under consideration in which a licensed practitioner is denied membership on the medical staff of a tax-supported hospital solely on the ground that he had not completed a one-year internship.

Once the trial court determined that Harvey was rejected only because he failed to complete a one-year internship, summary judgment was proper as a matter of law pursuant to the 1961 Statute and the 1971 Statute and *McCray Memorial Hospital* v. *Hall, supra.* No material issue of fact remained to be presented to the trial court.

ISSUE TWO. It is our opinion that the trial court did not err in limiting the presentation of evidence in the hearing on the Motion for Summary Judgment.

Rule TR. 56 (C) provides, in part, that:

". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

Although a summary judgment may dispose of all the issues in a particular cause, the proceedings upon which the judgment is based is not a trial. The only function of the materials filed in support of a motion for summary judgment is to allow the court to pierce the formal allegations of the pleadings to determine if those allegations are supported factually. *Pan American World Airways, Inc.* v. *Local Readers Service, Inc.* (1969), 143 Ind. App. 370, 240 N. E. 2d 552.

A court confronted with a motion for summary judgment *may* hold a hearing and receive testimony of witnesses. Rule TR. 56 (E) further provides:

". . . The court *may* permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, further affidavits, or, *within the discretion of the judge, testimony of witnesses. . . ."* (Emphasis supplied.)

The sole purpose for the introduction of such testimony is to allow the court to determine whether a genuine issue of material fact exists. The court is not permitted to weigh the testimony or ascribe credibility to the witnesses. The issues are not tried. *Aldridge* v. *Aldridge* (1968), 142 Ind. App 289, 233 N. E. 2d 781; *Verplank* v. *Commercial Bank of Crown Point* (1969), 145 Ind. App. 324, 251 N. E. 2d 52; *Houston* v. *First Federal Sav. & Loan Ass'n. of Gary* (1969), 144 Ind. App. 304, 246 N. E. 2d 199.

The Hospital misconceives the purpose of summary judgment by claiming it has been denied a fair trial. The trial court, in confining evidence presented to determine if a material issue of fact existed as to the reasonableness of the Hospital's rule and how it might differ from the hospital rule construed by this court in *McCray Memorial Hospital* v. *Hall, supra,* carried out the objective of TR. 56. The trial judge properly exercised his discretion to narrow the inquiry so that if no such material issue of fact existed, summary judgment could be granted as a matter of law. *Klinger* v. *Caylor* (1971), 148 Ind. App. 508, 267 N. E. 2d 848. In doing so, the Hospital was not denied a fair trial.

The judgment of the trial court is therefore affirmed.

Sullivan, J. and Robertson, P.J. (by designation), concur. White, P.J., not participating.

NOTE.—Reported in 279 N. E. 2d 583.