MYERS *v.* POST.

1. MUNICIPAL CORPORATIONS—BOARDS OF SUPERVISORS HAVE FIDU-CIARY RELATION TO ENTIRE COUNTY.
    Board of supervisors of Kent county has fiduciary relationship to entire county and not to city of Grand Rapids alone, not-withstanding approximately 80 per cent. of taxable property of county lies in city.

2. SAME—CONSTRUCTIVE FRAUD.
    Board of supervisors of Kent county, in refusing to renew lease of property owned by it in city of Grand Rapids to respon-sible person at $3,000 per year and leasing it to city for $501 per year, was guilty of constructive fraud on rights of tax-payers of county, even if there was no wilful dishonesty.

3. SAME—PERSONAL INTEREST OF MEMBERS—FIDUCIARY RELATION.
    Where all city members of board of supervisors voted to lease to city property owned by county at about one-sixth of its rental value, and all members of board from townships voted against it, action of city members in so voting is analogous to that of directors of corporation who vote for their per-sonal interest rather than that of corporation.

4. SAME—INJUNCTION—CONSTRUCTIVE FRAUD.
    Board of supervisors was properly restrained, at suit of taxpay-ers, from leasing property to city for about one-sixth of its rental value, where it is apparent that city was being favored at expense of county, and said action amounted to construc-tive fraud on taxpayers of county.

Appeal from Kent; Perkins (Willis B.), J. Sub-mitted October 6, 1931. (Docket No. 12, Calendar No. 35,794.) Decided December 8, 1931.

Bill by William H. Myers and others, as taxpay-ers, against Maurice Post, chairman of the board of supervisors of Kent county, and others to restrain

the leasing of certain county property to the city of Grand Rapids. The city of Grand Rapids intervened. Decree for plaintiffs. Intervener appeals. Affirmed.

*Linsey, Shivel & Phelps* (*John H. Vander Wal,* of counsel), for plaintiffs.

*Ganson S. Taggart* and *Robert S. Tubbs,* for intervener.

BUTZEL, C. J. The county of Kent consists of the cities of Grand Rapids and East Grand Rapids, and a large number of outlying townships. It owns a lot with a building on it of the value of $45,000 in the city of Grand Rapids. Notwithstanding the fact that the property was rented to a financially responsible party at a rental of $3,000 per year under a lease, which the lessee offered to renew on like terms for an additional term of five years, the board of supervisors of the county authorized the leasing of the property to the city of Grand Rapids for a period of three years at an annual rental of only $501. Of the 51 members of the board of supervisors who attended the meeting, 24 represented the city of Grand Rapids, 3 East Grand Rapids, and 24 the townships. The fire marshal of Grand Rapids stated at the meeting that it was essential that the city acquire the property in order to promote the efficiency of the fire department by the use of a portion of the property as a drill field and fire tower. The city also intended to use the building on the premises to store property belonging to the city police department. The city has contracts for furnishing fire protection to some of the outlying townships and receives pay for this service. There is no showing that the townships receive any police pro-

tection from the city. At a prior meeting of the board it was contended that the rental of $3,000 per year was inadequate. However, at the meeting at which the action was taken to rent the property to the city for $501 per year, it was openly charged that the members of the board who voted in favor of this action were acting in the interest of the city and not of the county, whose interests it was their duty to protect. The 24 members from Grand Rapids, together with the 3 from East Grand Rapids, voted in favor of leasing the property to the city. The 24 members from the townships voted against it. After a hearing on a bill filed by plaintiffs, some, as supervisors, and all as taxpayers, residing in the townships, the court rendered a decree restraining the entering into the lease on the ground that the action of the board was confiscatory in disposing of property at an inadequate price unless the general public benefit of the county at large be considered, and that under the evidence such imaginary consideration did not enter as an element in the transaction.

The board has a fiduciary relationship to the entire county and not to the city alone, notwithstanding the fact that approximately 80 per cent. of the taxable property of the county lies in the city. Defendants urged strongly that the city pays the larger part of the taxes, but they did not state, however, that in turn the city would indirectly receive the benefit of a larger part of the income from the property. It would require strong proof under the present circumstances to show that the indirect benefit to the entire county was the moving consideration in refusing to continue a lease from a responsible person at $3,000 a year instead of leasing it to the city for $501 a year. Even if there were such a

showing, there is no claim whatsoever made that the townships at large received any benefit whatsoever from the city's police department which was to have the use of the building for storage purposes. The division of the vote indicates that supervisors from the city of Grand Rapids, aided by those from the city of East Grand Rapids, were acting wholly in the interest of the city and not of the county at large. The trial judge denounced the entire transaction as a fraud on the county. Even though there may be no wilful dishonesty in the transaction, it is a constructive fraud on the rights of the taxpayers of the county. It is analogous to an action by a board of directors who by their vote evidenced their personal interest instead of that of the corporation. *Turner* v. *Calumet & Hecla Mining Co.*, 187 Mich. 238; *McKey* v. *Swenson*, 232 Mich. 505.

The decree of the lower court is affirmed, with costs.

WIEST, CLARK, MCDONALD, POTTER, SHARPE, NORTH, and FEAD JJ., concurred.