### RIDENOUR *v.* COUNTY OF BAY.

1. CONSTITUTIONAL LAW—DUE PROCESS—NOTICE—PUBLICATION.
     Public securities validation act which provided for notice to known parties in interest as defendants solely by statutory publication failed to provide for adequate notice to meet the requirements of the due process clauses of the Federal and State Constitutions (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1959, No 161, § 7).

2. SAME—DUE PROCESS—OPPORTUNITY FOR HEARING.
     The fundamental requisite of due process of law is the opportunity to be heard (US Const, Am 14; Mich Const 1908, art 2, § 16).

3. SAME—DUE PROCESS—NOTICE—HEARING.
     Due process of law in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objec-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 39 Am Jur, Notice and Notices §§ 9, 21.
[2] 12 Am Jur, Constitutional Law § 607.
[3, 5–7] 12 Am Jur, Constitutional Law § 573.
[8] 17A Am Jur, Drains and Sewers §§ 66, 67.
[10–13] 3 Am Jur, Appeal and Error §§ 823, 824.
[14] 14 Am Jur, Costs § 37.

tions; a notice which is of such a nature as reasonably to convey the required information and afford a reasonable time for those interested to make their appearance (US Const, Am 14; Mich Const 1908, art 2, § 16).

4. COUNTIES—PUBLIC WORKS—SPECIAL ASSESSMENTS—NOTICE—PUBLICATION IN NEWSPAPER.

County public works act providing for the establishment of special assessment districts for water supply system or sewage disposal system in a proceeding for which the only notice to persons within the district is by publication in a newspaper *held*, unconstitutional for failure to provide a proper notice, being a denial of due process of law (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1957, No 185, § 24).

5. STATUTES—PERMISSIVE ACTION BY ADMINISTRATOR OF STATUTE.

The constitutionality of a statute must rest upon the provisions of the statute itself and not upon the grace or favor of a court in giving the notice and affording the opportunity for hearing not provided for by the statute.

6. COURTS—CONSTITUTIONAL LAW—STATUTES.

When courts are considering the constitutionality of a statute, they should take into consideration the things which the statute permits, and not what action an administrative officer may or may not take to supply omissions.

7. STATUTES—NOTICE OF HEARING—KNOWN PARTIES IN INTEREST.

Judge- or administrator-imposed mailing of notice of a hearing in an action affecting one's property does not cure the invalidity of the statute providing for such proceeding which does not require that personal service be given to known parties in interest in such property (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1957, No 185, § 24; PA 1959, No 161, § 7).

8. COUNTIES—PUBLIC WORKS—SPECIAL ASSESSMENT DISTRICTS—SEWERS—OMITTED AREAS—PAYMENT FOR LATER CONNECTION.

Omission of certain township and city areas from special assessment district for sewage disposal system to be constructed under county public works act, although such areas benefited therefrom, *held*, not to have deprived persons presently assessed without due process of law, where the system was so designed as to permit parties in such omitted areas to connect at a later date and administrative agency provided for such connection upon payment for flowage rights which would be used to reduce or make refunds on special assessments made on lands

presently in the system (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1957, No 185).

9. MUNICIPAL CORPORATIONS—COUNTIES—SEWERS—PROFITS—LEGISLATIVE ACTION.

Contract between city and county relative to use of portions of sewer systems constructed by each whereby city would obtain a 5% profit for county's use of city's system *held,* not such an inordinate profit as to invalidate action taken in the discretion of the legislative bodies of the 2 parties (PA 1957, No 185).

10. APPEAL AND ERROR—QUESTIONS REVIEWABLE—TRIAL.

Whether or not the proceedings resulting in decree appealed from were at issue and ready for trial at the time the case was tried is not determined, where appeal has resulted in declaration that portions of statutes involved were invalid and to carry the proposed project into effect will require amendment of the statutes, proper notice to the parties in interest, and institution of new actions (PA 1957, No 185, § 24; PA 1959, No 161, § 7).

11. SAME—QUESTIONS REVIEWABLE—REVIEW OF SPECIAL ASSESSMENTS FOR SEWAGE DISPOSAL SYSTEM.

Whether or not trial court prematurely validated special assessment bonds for sewage disposal system attempted to be established under county public works act is not determined, where proceedings were invalid by reason of unconstitutionality of notice provision of controlling statutes, since special assessment proceedings will have to be again reviewed (PA 1957, No 185, § 24; PA 1959, No 161, § 7).

12. COURTS—MOOT QUESTION.

Fact that at time county board of public works was established members of county board of supervisors were appointed to such public works board contrary to then-existing statutes, served to invalidate action taken by the public works board, although legislature later validated such appointments, *held,* moot, where new acts of the board will be after enactment of statute empowering supervisors to sit as members of the public works board (PA 1957, No 185, § 2, as amended by PA 1959, No 18).

13. APPEAL AND ERROR—QUESTIONS REVIEWABLE—COUNTIES—SEWERS—INVALID SPECIAL ASSESSMENTS—FRAUD.

Whether or not special assessments for proposed sewage disposal system were illegal and void for lack of jurisdiction in the county board of public works, for fraud, and for unequal assessments based upon an arbitrary formula is not discussed on an appeal from decree holding valid the actions taken by

the board, where the Supreme Court holds provision of the public works act as to notice invalid (PA 1957, No 185, § 24).

14. COSTS—PUBLIC QUESTION—VALIDITY OF COUNTY PUBLIC WORKS ACT.

No costs are allowed in suit to invalidate county public works act, a public question being involved (PA 1957, No 185).

Appeal from Bay; Quinn (Timothy C.), J., presiding. Submitted October 18, 1961. (Docket Nos. 89, 90, Calendar Nos. 49,107, 49,123.) Decided March 19, 1962. Rehearing denied May 17, 1962.

Bill by Eugene D. Ridenour, Clifford Jones, and 4 other property owners, as a class action, against the County of Bay acting through its department of public works, the City of Bay City, a municipal corporation, and the Township of Bangor, to declare unconstitutional a statute authorizing the establishment of a public works board and the levying of an assessment in a special district to defray cost of improvement, to invalidate all actions taken by the Bay county board of public works, to declare void special assessment for Bangor sewage disposal district, and to enjoin sale of bonds in connection therewith.

Cross bill by County of Bay, under public securities validation act, to establish validity of all proceedings taken. The State of Michigan and all property owners and taxpayers in affected area named as parties cross defendant. Publication made and, on *sua sponte* order of court, all known property owners served by mail with order to show cause. Joseph Vinson and 400 property owners appeared and moved to dismiss cross bill. Motion denied.

Decree entered dismissing plaintiffs' amended bill with prejudice to them, to cross defendants, and to all members of the class, determining all special assessment proceedings taken by county board valid and enforceable, and enjoining future contest on validity of bonds.

Cross defendant State of Michigan appeals. Plaintiff property owners and cross defendant property owners appeal. Appeals consolidated. Defendant County of Bay cross-appeals. Reversed, with provisions in both acts declared unconstitutional for failure to provide adequate notice, and case remanded for entry of decree on plaintiffs' amended bill.

*Floyd T. Fuss,* for plaintiff and cross defendant property owners.

*Ira W. Butterfield (Dickinson, Wright, McKean & Cudlip,* of counsel), for defendant County of Bay, Board of Public Works.

*Martin B. Legatz,* Prosecuting Attorney, for defendant County of Bay.

*John X. Theiler,* City Attorney, for defendant City of Bay City.

*F. Norman Higgs,* for defendant Bangor Township.

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *Eugene Krasicky,* Assistant Attorney General, for cross defendant State of Michigan.

*Amici Curiae* on application for rehearing:

*Albert H. Schlenker, Jr.,* for Village of Inkster.

*Ralph B. Guy, Jr.,* Corporation Counsel, and *Carl P. Garlow,* Assistant Corporation Counsel, for City of Dearborn.

*Miller, Canfield, Paddock & Stone (John H. Nunneley, Stratton S. Brown,* and *Robert E. Hammell,* of counsel), for Cities of Allen Park and Royal Oak and Township of Bloomfield.

KAVANAGH, J. This action grows out of an attempt by the county of Bay and the city of Bay City to

create a Bay county board of public works. The validity of a contract between the 2 municipalities and the validity of certain actions taken by the board of public works of Bay county to set up a special assessment district and to issue bonds to pay for the construction of a sewer improvement at the cost of $995,000 is sought to be determined. Chronologically the proceedings were as follows:

The board of supervisors of Bay county at a regular meeting on January 14, 1959, authorized by resolution the establishment of a board of public works, pursuant to PA 1957, No 185 (CL 1948, §§ 123.731–123.786 [Stat Ann 1961 Rev §§ 5.570(1)–5.570(56)]). The resolution of the board of supervisors specified that the board of public works shall consist of 7 members, 1 of whom shall be the Bay county drain commissioner.

On January 14, 1959, the board of supervisors appointed 6 of its own members to serve on the board of public works in addition to the drain commissioner.

On October 12, 1959, the board of supervisors established Bangor sewage disposal system No 1 as a county sewage disposal system, pursuant to the statute, and determined to finance the cost of the system by the issuance of bonds in anticipation of the payment of special assessments.

The consent of Bangor township to furnish sewage disposal services to individual users within the area in the township designated and described as Bangor sewage disposal district No 1 was obtained, as is set forth in the contract between the county and township dated October 15, 1959.

On December 1, 1959, the county entered into a contract with the city of Bay City, by which the county agreed to purchase sewage disposal services from the city and received the right to transport

sewage through the sewers of the city for a period
of 35 years.

On December 3, 1959, when the board of public
works of Bay county approved and authorized the
execution of the agreement between the county and
the city, there were 6 members of the 7-man board
present and voting, all of whom voted to approve the
agreement. Two members of the board were repre-
sentatives of the city of Bay City at that date and
5 were members of the Bay county board of super-
visors at that date.

On December 15, 1959, the board of supervisors of
Bay county approved and authorized the execution
of the agreement between the county of Bay and the
city of Bay City. Of the 44 elected members of the
board of supervisors, 39 members were present and
voting. All 39 members voted to approve the agree-
ment. Twenty of the 39 were representatives of the
city of Bay City.

The board of public works caused plans to be pre-
pared and obtained an estimate of costs in the
amount of $800,000 for such system. On December
17, 1959, the board received and ordered such plans
and estimate filed with its director of public works.
On the same date the board of public works passed a
resolution tentatively declaring its desire to proceed
and designating Bangor sewage disposal district No
1 as the special assessment district. The district
was to consist of the lands especially benefited and
against which the whole of the cost of the system was
to be assessed.

The disposal system was designed so as to permit
connections thereto at a later time, if so desired, of
systems constructed to serve areas of Monitor town-
ship in Bay county. The board of public works stated
by resolution, adopted April 7, 1960, that such con-
nections to serve additional areas would not be per-
mitted unless payment is received for flowage rights.

in the Bangor system. The payments would be used to reduce or make refunds on special assessments made against the lands in the Bangor district.

Bangor sewage disposal system No 1 is also designed so as to permit connections thereto, at such times as the city may desire, of sewers constructed to serve limited areas in the city, to the extent of .8 cubic foot per second for the total flowage emanating from the city area. The city agreed to receive flowage not to exceed 7.2 cubic feet per second from the Bangor system. Bay county has, in exchange for such connections to be made by the said city, received flowage rights in the city's sanitary sewage disposal system, and has agreed to pay a charge for sewage treatment which includes a factor for the capital cost of the city's system.

On January 4, 1960, the board heard objections to the improvement and to the special assessment district. Notice of the hearing was published on December 21 and 28, 1959, in accordance with section 24 of PA 1957, No 185, which reads in pertinent part as follows:

"When any special assessment roll shall have been made the same shall be filed in the office of the director of public works. Before confirming the assessment roll the board of public works shall fix a time and place when it will meet and review the same and hear any objections thereto, and shall cause notice of the hearing and of the filing of the assessment roll, to be published twice prior to the hearing in a newspaper circulating in the special assessment district, the first publication to be at least 10 days before the hearing." CL 1948, § 123.754 (Stat Ann 1961 Rev § 5.570[24]).

Notice was also sent by first class mail on December 21, 1959, to every person who, according to the tax assessment records of Bangor township, owned

property within Bangor sewage disposal district No 1, at the address shown on the records.

On January 12, 1960, after construction bids were received it became necessary to increase the estimated cost of the system from $800,000 to $995,000. A new hearing was had and notice was given in the same manner as previously.

On January 28, 1960, the board of public works approved the plans and estimate of costs, as revised. It finally determined that Bangor sewage disposal district No 1 was the special assessment district and the director of public works was directed to prepare a special assessment roll for the district. The roll was prepared as directed and filed on January 28, 1960.

Notice was published in the Bay City Times on January 30 and February 8, 1960, in accordance with the statute, and was also sent by first class mail on February 1, 1960, to every person who, according to the special assessment roll, was the owner of property in the special assessment district at the address shown on the roll on that date.

On February 11, 1960, the board of public works met and reviewed the special assessment roll as prepared and heard written and oral objections.

On February 16, 1960, the board of public works confirmed the special assessment roll.

Owners of land in Bangor sewage disposal district No 1 paid, on or before March 31, 1960, in advance on the special assessments against their lands in the district, a sum in excess of $170,000. Included among said owners are 63 persons who paid the special assessment against their lands in full in the amount of $80,396.13, and who subsequently, pursuant to resolutions of said board of public works adopted March 10 and May 10, 1960, requested and obtained a refund in full of the $80,396.13 of prepaid special assessments.

The county of Bay authorized the issuance by the county of $815,000 principal amount of negotiable bonds to be known as "Bay County Special Assessment Bonds—Bangor Sewage Disposal System No 1." The full faith and credit of the county was pledged for the prompt payment of the principal of and interest on said bonds. The board of public works was authorized by the board of supervisors to sell the bonds in accordance with the laws of the State of Michigan.

Neither the special assessment roll for Bangor sewage disposal system No 1 nor any of the assessments thereon were attacked by anyone in a court of competent jurisdiction within 30 days after February 16, 1960, the date of confirmation, as required by the statute.[1]

Plaintiffs began this suit by filing a bill of complaint in chancery on April 18, 1960. An amended bill of complaint was filed by plaintiffs on May 16, 1960, alleging the invalidity of the special assessment district known as Bangor sewage disposal district No 1 and the special assessments levied thereunder. The amended bill sought a declaration of the invalidity of the creation of the Bay county board of public works and all actions taken by the board and the invalidity of a certain contract between the county of Bay and the city of Bay City. Plaintiffs further sought to enjoin the issuance of special assessment bonds in the sum of $815,000 to be issued in anticipation of collection of an equal amount of unpaid special assessments levied in the Bangor sewage disposal district No 1.

---

[1] The statute, CL 1948, § 123.754 (Stat Ann 1961 Rev § 5.570[24]), reads in part as follows:

"After the confirmation the special assessment roll and all assessments thereon shall be final and conclusive unless attacked in a court of competent jurisdiction within 30 days after the date of confirmation."

The county of Bay, acting through its department of public works, filed a cross bill of complaint under section 3 of PA 1959, No 161,[2] seeking the validation of the special assessment bonds to be issued in anticipation of a collection of an equal amount of unpaid special assessments against lands of Bangor sewage disposal district No 1 so as to construct a sewage improvement.

Pursuant to a prayer contained in the cross bill, an order was entered on May 13, 1960, by the trial court directing the State of Michigan, through the attorney general, and all other persons, both known and unknown, to show cause why a decree should not be entered determining that the special assessment bonds which were sought to be issued were valid and enjoining every person and public body from contesting the validity, or any aspect of the validity, of said bonds. The order further provided that notice be published once each week for 3 weeks and that the order be served upon the plaintiffs and upon the attorney general. The publication was in accordance with section 7 of PA 1959, No 161.[3]

---

[2] Section 3 of PA 1959, No 161 (CL 1948, § 691.483 [Stat Ann 1961 Rev § 3.994(3)]) reads as follows:

"Sec. 3. If an action contesting the validity of any securities proposed to be issued or any aspect of such validity is brought against any public body, the public body may file a cross bill against the plaintiff and against the State of Michigan and all persons, resident and nonresident, owning property or subject to taxation in the public body or in the political entity or entities it represents, and all other persons interested in or affected by the issuance of the securities, for the purpose of securing an adjudication, forever conclusive as against all the parties, as to the validity of the securities or as to those issues affecting such validity as are then properly justiciable or become so during the pendency of the proceedings. The court may grant continuances and permit amendments as may be appropriate to enable the issues affecting the validity of the securities to be adjudicated as fully as possible."

[3] Section 7 of PA 1959, No 161 (CL 1948, § 691.487 [Stat Ann 1961 Rev § 3.994(7)]), reads in pertinent part as follows:

"Sec. 7. Prior to the date set for hearing, the clerk of the court shall publish a copy of the order once each week for 3 consecutive weeks in each of the newspapers designated below, the first publication in each newspaper to be not less than 20 nor more than 30 days prior to the date set for hearing."

The order to show cause was made returnable on June 15, 1960. On May 24, 1960, despite the fact the cause was not at issue, and even though the attorney general had not as yet made a return to the order to show cause nor filed any pleadings, a pretrial was held. At the pretrial hearing the trial court reviewed the pleadings and set forth the issues of fact and of law. The attorney general was granted the right to raise other questions of law in order that briefs could be filed by counsel in the case prior to the return on the order to show cause.

Following the filing of briefs, the court on July 6, 1961, heard oral arguments on questions of law. After the attorney general had raised the question of the constitutionality of PA 1959, No 161, because it conferred jurisdiction on the court based upon publication only, the court, on its own motion, on July 7, 1960, entered a second order to show cause and provided for notice to be given by statutory publication and in addition by first-class mail to all persons listed in the special assessment roll for Bangor sewage disposal district No 1 at least 20 days before August 1, 1960, which was the return date on the order to show cause.

On August 12, 1960, the trial court rendered its opinion on the questions of law which had been raised, briefed, and orally argued. The court refused to pass on the constitutionality of PA 1959, No 161, although the question had been pleaded in the answer and had been briefed by the parties.

Approximately 400 of the persons who had received the mailed notices, as specified in the second order to show cause, appeared by their attorney and filed a motion to dismiss the cross bill on July 28, 1960, alleging that PA 1959, No 161 was unconstitutional in that it violated the due process clauses of the Federal and State Constitutions.

Prior to the opening of the trial on August 16, 1960, the motion to dismiss was heard and denied by the court. An oral motion was then made by the attorney for the 400 individual cross defendants seeking an opportunity to answer and complete their pleadings before the trial. The trial court denied the motion, saying no new issues were being raised except such as are barred under the 30-day statute—section 24 of PA 1957, No 185 (CL 1948, § 123.754 [Stat Ann 1961 Rev § 5.574[24]]).

The case proceeded to trial and in his opinion the trial judge denied the relief prayed under the amended bill of complaint filed by plaintiffs. He dismissed the amended bill of complaint with prejudice as to plaintiffs and cross defendants. The trial judge included all members of the class plaintiffs claimed to represent. The decree dismissing provided that any owner on February 11, 1960, of an interest in lands in the Bangor sewage disposal district No 1, whose name and address was known to or reasonably ascertainable by the county of Bay on or before February 11, 1960, and who in fact received no notice by mail or otherwise of the hearing to review the special assessment against the interest of such owner in lands in the district, and who did not attend said hearing, would be entitled to demand notice of and a hearing to review the special assessment against the interest of the owner in lands in the district before the same should constitute a lien upon and be enforceable against the interest of the owner. The trial judge decreed the special assessment proceedings taken by the Bay county board of public works were valid and complete on their face and the special assessment roll and all assessments thereon were final and conclusive and no longer subject to attack in any court. He further decreed the assessments constituted enforceable liens against the lands in the district and had been spread according to bene-

fits and in compliance with the requirements of due process of law under the Federal and State Constitutions, except as to an assessment against the State of Michigan and an assessment against parties by the name of Fiebke.

The decree further approved the proceedings by the county of Bay to authorize and issue the special assessment bonds, except for compliance with the provisions of PA 1943, No 202, as amended (CL 1948, § 131.1 *et seq.*, as amended [Stat Ann 1958 Rev and Stat Ann 1959 Cum Supp § 5.3188(1) *et seq.*]), and except for the sale and delivery of said bonds in compliance with the law. The decree enjoined the enforcement of any proceedings by any person or public body contesting the validity of the bonds or contesting any aspect of the validity of the bonds.

The attorney general on behalf of the State of Michigan, the plaintiffs, county of Bay as cross appellant, and the property owners appeal raising the following questions:

1. Does PA 1959, No 161, offend the due process clause of the Fourteenth Amendment to the United States Constitution and article 2, § 16, of the Michigan Constitution (1908), in that it confers personal jurisdiction upon the circuit court over all public bodies, property owners, taxpayers, citizens and other known and unknown persons claiming or having any right or interest affected in any way by the issuance of securities, and authorizes the circuit court to enter a personal decree upon the cross bill of complaint against them based solely upon publication of an order in a newspaper?

2. Did the trial judge-imposed mailing of the order to show cause to those persons whose names and addresses appeared on the special assessment roll cure the due process deficiency of PA 1959, No 161?

3. Did the omission of certain areas of the city of Bay City and Monitor township from the special

assessment district, although the areas benefited specially therefrom, constitute the taking of the property of persons against whom special assessments were levied in said district without due process of law?

4. Is the contract between the city of Bay City and the county of Bay, which by its terms permits the city of Bay City to use 10% of the Bangor sewage disposal district No 1 system, valid and enforceable?

5. Were landowners named in the motion to dismiss denied due process of law when the trial court refused to permit them the opportunity to file answers to the cross bill of complaint so that they could avail themselves of any individual substantive defenses they may have had to the cross bill of complaint?

6. May the court validate special assessment bonds prior to the time the board of public works recaptures in full special assessments paid in full but subsequently refunded, or, in lieu thereof, complete reassessment procedures against lands affected by said refunds?

7. Were the special assessment proceedings conducted by a board of public works composed of a majority of members who allegedly occupied such post contrary to civil and criminal statutes valid, so that lands affected thereby are charged with a statutory lien under PA 1957, No 185?

The property owners raise the following additional question:

Did section 24 of PA 1957, No 185, bar the property owners from proving that the special assessments were illegal and void for reasons of lack of jurisdiction in the board of public works, for fraud, and unequal assessments based upon an arbitrary formula?

PA 1959, No 161, fails to provide for adequate notice to meet the requirements of the due process

clauses of the Fourteenth Amendment to the Federal Constitution and article 2, § 16, of the State Constitution.

The United States supreme court in *Mullane* v. *Central Hanover Trust Company,* 339 US 306 (70 S Ct 652, 94 L ed 865) said (pp 312, 313):

"But in any event we think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally and which, being primarily for State courts to define, may and do vary from State to State. Without disparaging the usefulness of distinctions between actions *in rem* and those *in personam* in many branches of law, or on other issues, or the reasoning which underlies them, we do not rest the power of the State to resort to constructive service in this proceeding upon how its courts or this court may regard this historic antithesis."

The court quoted from *Grannis* v. *Ordean,* 234 US 385, 394 (34 S Ct 779, 58 L ed 1363) as follows (p 314):

" 'The fundamental requisite of due process of law is the opportunity to be heard.' "

The court went on to say (pp 314, 315):

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (Citing cases.) The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance, *Roller* v. *Holly,* 176 US 398 (20 S Ct 410, 44 L ed 520) and *cf. Goodrich* v. *Ferris,* 214 US 71 (29 S Ct 580, 53 L ed 914).
: * * *'

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski,* 274 US 352 (47 S Ct 632, 71 L ed 1091), with *Wuchter* v. *Pizzutti,* 276 US 13 (48 S Ct 259, 72 L ed 446, 57 ALR 1230), or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

"It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts."

The court said (p 318):

"Accordingly we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee.

"As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing."

The court then proceeded to hold the statutory notice to known beneficiaries to be inadequate because under the circumstances it was not reasonably calculated to reach those who could easily be informed by other means at hand. As to unknown defendants, the court held the statutory publication notice sufficient to meet the requirements of due process of law.

In *Covey* v. *Town of Somers,* 351 US 141 (76 S Ct 724, 100 L ed 1021), appellant, who was the guardian of an incompetent person, sought to hold void a notice by mail given in a proceeding to foreclose a lien for delinquent taxes of real estate, when the tax-

payer was well known by town officials to be financially able to meet her obligations but mentally incompetent to handle her affairs or to understand the meaning of any notice served upon her. The United States supreme court in holding the notice insufficient quoted at length from *Mullane* v. *Central Hanover Trust Company, supra,* on the elementary and fundamental due process requirements under such circumstances and then held that notice to a person known to be an incompetent who is without the protection of a guardian does not measure up to the requirement of due process.

An insufficiency as to notice by publication was also found in *Walker* v. *City of Hutchinson,* 352 US 112 (77 S Ct 200, 1 L ed 2d 178), dealing with a condemnation proceeding in which the commissioners, authorized under a Missouri statute to determine compensation for property taken by a municipality, gave notice by publication in the official city paper. The landowner attempted to set aside the proceedings alleging he had never been notified of the condemnation proceedings and knew nothing about them until after the time for appeal had passed. He charged the newspaper publication authorized by the statute was not sufficient notice to satisfy the Fourteenth Amendment due process requirement. Appellant's name was known to the city and was on the official records. Citing *Mullane* v. *Central Hanover Trust Company, supra,* the court held that newspaper publication under the circumstances in the *Walker Case* did not provide adequate notice of a hearing to determine compensation.

The statute we are dealing with in the instant case provides only for publication for known and unknown parties. We hold PA 1959, No 161, offends the due process clauses of both the Fourteenth Amendment to the Federal Constitution and article 2, § 16 of the State Constitution under circumstances

where it fails to provide adequate methods of notice for known parties.

We would not ordinarily pass upon the constitutionality of PA 1957, No 185, since the question of constitutionality was not raised in the lower court and is not raised here. However, since public rights and the financing of public improvements are involved, and since a certain emergency exists about getting proper statutes enacted, we note PA 1957, No 185, contains somewhat similar provisions for publication* as PA 1959, No 161. Such publication would clearly violate the due process clauses of both the Fourteenth Amendment to the Federal Constitution and article 2, § 16, of the State Constitution (1908). We, therefore, find PA 1957, No 185, unconstitutional so far as it fails to provide a proper method of notice.

As to the question of whether or not the judge-imposed mailing of the order to show cause cured the due process deficiency, we call attention to the discussion of this subject matter in *Trellsite Foundry* v. *Enterprise Foundry*, 365 Mich 209, and in the cases therein cited. In *Trellsite*, Chief Justice DETHMERS, writing the majority opinion for this Court said (pp 215, 216):

"In *Rassner* v. *Federal Collateral Society, Inc.*, 299 Mich 206, this Court held a statute unconstitutional on the ground that it was violative of due process requirements because it permitted pawnbrokers, in certain circumstances and proceedings, to be deprived of possession of pawned articles without notice or hearing. We quote from the syllabi in that case the following:

" 'No one, consistent with constitutional safeguards, can be deprived of possession of property

---

* Section 24 of PA 1957, No 185 (CL 1948, § 123.754 [Stat Ann 1961 Rev § 5.570(24)]), and section 7 of PA 1959, No 161 (CL 1948, § 691.487 [Stat Ann 1961 Rev § 3.994(7)]).

without reasonable notice and an opportunity to be heard.' (Syllabus 3.)

" 'The constitutionality of a statute must rest upon the provisions of the statute itself and not upon the grace or favor of a court in giving the notice and affording the opportunity for hearing not provided for by the statute.' (Syllabus 5.)

" 'When courts are considering the constitutionality of a statute, they should take into consideration the things which the statute permits, and not what action an administrative officer may or may not take to supply omissions.' (Syllabus 7.)

"In *Wuchter* v. *Pizzutti*, 276 US 13 (48 S Ct 259, 72 L ed 446, 57 ALR 1230), it was urged that defendants had been given actual notice of a proceeding in ample time to permit them to appear and defend. The supreme court of the United States said (p 24) :

" 'But it is said that the defendant here had actual notice by service out of New Jersey in Pennsylvania. He did not, however, appear in the cause and such notice was not required by the statute. Not having been directed by the statute it cannot, therefore, supply constitutional validity to the statute or to service under it.' "

The constitutionality of the statute is determined by the provisions for notice in the statute itself rather than by the whim and caprice of a court. Judge- or administrator-imposed mailing could not cure the due process deficiency of PA 1959, No 161, and PA 1957, No 185.

The question as to the rights of certain areas of Monitor township and certain areas of the city of Bay City to use the sewage disposal system does not appear to us to have been erroneously answered by the trial court.

An examination of the record discloses the disposal system was designed so as to permit these parties to connect at a later date. Such connections, under resolution of the board of public works adopt-

ed April 7, 1960, are not to be permitted unless payment is received for flowage rights into the system. The payments would be used to reduce or make refunds on special assessments made against the lands in the Bangor system. Presumably, the refunds would be made on a percentage basis so as to reduce the present assessments of the property owners. The trial judge, in his opinion, found that this did not deprive the persons presently assessed of their property without due process of law. With this we agree.

The fourth question raised deals with whether the contract between the city of Bay City and the Bay county board of public works, which permits the city to use 10% of the sewage capacity, is invalid in that it allowed Bay City an inordinate profit.

The case of *Meyers* v. *Post,* 256 Mich 156, relied on by the attorney general for authority, does not apply to a situation similar to the one we have before us. It is the contention of the attorney general that the city of Bay City seeks to obtain the use of a portion of the Bangor sewage disposal system plus a fee for disposing of the waste coming from that system which would provide it with a profit of 5% and that this constitutes an excessive price for the services received. The attorney general further contends such payment works a constructive fraud upon the taxpayers of Bangor township, and that since the representatives on the board from Bay City have sought to sacrifice the interest of the county in favor of the city of Bay City, the attempt to represent 2 interests—the county on the one hand and the city on the other—constitutes a conflict of interest so as to make illegal the contracts between the city and the county.

The trial court in his opinion found "no basis for judicial interference" and further found "factually, as well as legally, that the contracts involved are

valid and proper and that there is no basis for invalidating the special assessments involved because of such contracts or the alleged benefits to areas not taxed." An examination of the record discloses support for this position. The contract provided the city would be permitted to use up to .8 cubic feet of the force main's capacity, as compared to the county's 7.2 cubic feet, but the sewer capacity as far as the city was concerned was to serve only a limited area. The contract provided this right of flowage was given in exchange for the right of flowage through the city's interceptor.

We cannot say on this record that such an arrangement resulted in inordinate profit so as to make the contract inequitable, unreasonable and arbitrary. The contract is legislative in character. The legislative bodies exercised their discretion. We think the conclusion of the lower court—that the profit was not an inordinate one so as to invalidate the contract —was a correct conclusion.

Since unquestionably when the 2 acts here involved are amended and proper notices given to the parties in interest, new actions will be instituted, and at that time the 400 individuals who sought to become parties may be joined, we do not pass upon the merits of the question of whether the proceedings were at issue and ready for trial at the time the case was tried.

Further, since the assessment proceedings will no doubt have to be again reviewed, we do not pass upon the refund question stated in the sixth question.

The seventh question concerns the validity of the actions and assessments made by the members of the Bay county board of public works while holding that office in violation of civil and criminal statutes, and whether the purported assessments constitute an invalid and unenforceable lien on the properties included in the sewage disposal district.

We find it was the intention of the legislature by the enactment of PA 1959, No 18* (which amended section 2 of PA 1957, No 185) to validate all appointments made prior to the effective date of the .act, March 19, 1960. We further find that by the validation of previous appointments the legislature intended to approve the prior actions of the board. However, since in our view the board will be required to make new assessments, the question becomes moot since the new acts of the board will all be after the effective date of PA 1959, No 18.

The question raised by the property owners does not need discussion in view of the disposition of the other questions, particularly the constitutional ones.

The cross bill of complaint is dismissed and the decree entered by the trial court on the cross bill of complaint is set aside and held for naught. A decree shall be entered in the lower court based upon the amended bill of complaint filed by plaintiffs in accordance with the terms of this opinion.

A public question being involved, no costs shall be taxed.

DETHMERS, C. J., and CARR, KELLY, BLACK, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., took no part in the decision of this case.

---

* The pertinent portion of section 2 of PA 1957, No 185, as amended by PA 1959, No 18 (CL 1948, § 123.732 [Stat Ann 1961 Rev § 5-.570(2)]) reads as follows:

"Members of the board of supervisors may be appointed as members of the board of public works. All such appointments heretofore made are hereby validated."