Milo F. VALE, as Trustee in Bankruptcy of Ridge Road Investment Corporation, Bankrupt, Plaintiff-Appellant,

v.

GARY NATIONAL BANK, Defendant-Appellee.

No. 16862.

United States Court of Appeals Seventh Circuit.

Feb. 5, 1969.

---

Gilbert Gruenberg, Gary, Ind., for plaintiff-appellant.

Fred M. Cuppy, Gary, Ind., for defendant-appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Plaintiff, Trustee in Bankruptcy, appeals from a judgment of the district court dismissing his suit to set aside a mortgage transaction as void under Indiana law, and to recover from the mortgagee Bank, for the bankrupt estate, payments of $127,529.80 on the mortgage. We reverse.

The bankrupt corporation, on May 27, 1962, executed and delivered to the Bank a 90-day renewal note for $110,000 covering an existing loan. On August 24, 1962, officers and principal stockholders of the bankrupt executed a further renewal note for $117,705.00 to renew the prior note. The note was secured by mortgages on the corporation's property. The corporate officers and principal stockholders had previously executed general guaranties of payment of the corporate indebtedness to the Bank, and had not been released from their obligations at the time the mortgage was made. The Bank, on March 19, 1963, filed suit to foreclose the mortgages. The corporation was adjudicated a bankrupt July 17, 1963, in an involuntary proceeding, and plaintiff was subsequently appointed trustee.

The suit before us was filed October 4, 1966, upon the theory that the bankrupt's mortgage to the bank was an invalid preference under Title 17–101, Burns Ind.Stats. (1964 Repl.). The Bank's defense was that the part of Sec. 101, relied on by plaintiffs to invalidate the mortgage, violated the "one subject" clause of the Indiana Constitution and was accordingly void. The district court decided that the law was with the defendant, and denied relief. This appeal followed.

The Indiana Constitution in Article IV, Section 19, provides that "every act shall embrace but one subject and matters properly connected therewith"; and that the subject "shall be" expressed in the title.[1] The title of 17–101, as originally enacted, is "An act providing for voluntary assignments of personal and real property in trust for the benefit of

1. Subject matter and title-Amendments. Every act, amendatory act or amendment of a code shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, amendatory act or amendment of a code, which shall not be expressed in title, such act, amendatory act or amendment of a code shall be void only as to so much thereof as shall not be expressed in the title. The requirements of this paragraph shall not apply to original enactments of codifications of laws.

Every amendatory act and every amendment of a code shall identify the original act or code, as last amended, and the section or subsections amended shall be set forth and published at full length. The identification required by this paragraph may be made by citation reference.

creditors and regulating the mode of administering the same." Generally speaking, Sec. 101 enables a failing debtor to make a general assignment of *all* of his property in trust for the benefit of *all* of his bona fide creditors and provides that all assignments "hereafter" made shall be "deemed" fraudulent and void unless made in accordance with the statute. The statute further provides for the appointment, selection and removal of trustees. All of this is in Sec. 101, the first of twenty-three sections in a scheme of administration of the Act.

In 1929 Sec. 101 was amended by adding two clauses:

> Nothing in this act shall prevent any debtor from preferring a particular creditor or creditors by an assignment not made under this act, conveying less than all of the debtor's property or made for the benefit of less than all of his creditors, or by other means, when such action is taken in good faith, and not as a part of or in connection with a general assignment made under this act; but no corporation shall in any case prefer any creditor where any director of the corporation is a surety on the indebtedness preferred, or has been a surety on such indebtedness within four [4] months prior to such preference.

■■ Plaintiff's first contention is that the Bank has no standing to challenge the constitutionality of the statute. We see no merit in the contention. The cases cited by plaintiff do not fit this case. Pittsburgh, C. C. & St. L. Ry. Co. v. Montgomery, 152 Ind. 1, 49 N.E. 582, 69 L.R.A. 875 (1898), was a personal injury action, and the court said the railroad could not challenge the validity of the Employer's Liability Act on the ground that municipal corporations were not included in the Act, because if the Act was valid as to the railroad it could not litigate the constitutionality as to other corporations. And State v. Clark, 217 N.E.2d 588 (Ind.1966), implicitly supports the standing of the Bank here. There the court held that one's rights must be "adversely affected" by the statute challenged in order to have standing to attack the constitutionality. It seems clear that the Bank's mortgage rights will be adversely affected by the amendment to Sec. 101 if it is not allowed to show that that Act is unconstitutional.

Plaintiffs' main contention is that the mortgage given the Bank is prohibited by the last clause of the amendment, because directors of the bankrupt corporation were sureties on the indebtedness. The district court sustained that contention, but decided that the clause itself lay outside the subject as expressed in the title of the Act and was consequently void under the Indiana Constitution. Accordingly, the mortgage was held not to be an unlawful preference.

■ It is apparent, from reading the first clause of the amendment, that the Indiana legislature intended to save from the effect of the body of Sec. 101, the common law rule long adhered to in Indiana that a good faith preference made by a debtor assigning *less than all* of his property for the benefit of *less than all* creditors is valid. See Grubbs, et al. v. Morris, et al., 103 Ind. 166, 2 N.E. 579 (1885). It is equally apparent that the legislature, by enacting the second clause, intended to derogate from the common law because when the legislature transferred that clause from the Corporation Act in 1929 and located it in Title 17–101 as it did, the common law of Indiana permitted good faith preferences of creditors even where the debtor was a corporation and the directors sureties on the debt. See Nappannee Canning Co. v. Reid, Murdock & Co., 159 Ind. 614, 64 N.E. 870, 1115, 59 L.R. A. 199 (1902).

■ It is our view that the district court erred in determining that the last clause of the amendment falls outside of the subject of the title of the Act. The Indiana constitutional provision requires that the Act embrace but "one subject and matters properly connected therewith." The Indiana Supreme Court in State ex rel. Taylor v. Greene Circuit

Court, 223 Ind. 562, 63 N.E.2d 287, 289 (1945), set down the "general rules" with respect to the sufficiency of the title of an act. So far as necessary here, the rules are that the title must give notice of the subject of the Act, with sufficient clarity of legislative intent to those interested in the subject; also that all matters which are germane to and connected with the general subject may be included without violating the one subject rule.

The first clause of the 1929 amendment, as we have stated, contains an exception to the main provisions of Sec. 101 in that it permits a preference of *less than all* one's creditors by a good faith assignment of *less than all* of his property for the benefit of *less than all* his creditors, or *"by other means"* than assignments. In effect, the amendment saves common law preferences from the operation of the main provision of Sec. 101. It constitutes an exception to the general subject of the Act as expressed in the title. By enacting the last clause of the amendment, the legislature effectually provided an exception to the exception. We think that logic impels the conclusion that the last clause of the amendment is connected to the first clause, which is in turn connected to the main provision of Sec. 101, since it is an exception to it.

■ Indiana law presumes the amendment constitutional, and when it is challenged the law requires a showing of invalidity beyond a reasonable doubt. State v. Clark, 217 N.E.2d 588 (1966). Moreover, if the last clause of the amendment is so closely connected to the subject of the title as to cause any doubt whether it fits within it, Indiana law requires that it be found within the title. State ex rel. McCarty v. Board of Comm., 26 Ind. 522, 525 (1866). We conclude that the last clause to the 1929 amendment to Title 17–101 comes within the title of the Act. It does not violate the "one subject" rule of the Indiana Constitution.

■ The Bank agrees with plaintiffs' contention that the title of the Act embraces partial assignments or preferences, as well as general, but with the qualification that "the preferences relate to assignments for the benefit of creditors." It contends, however, that the 1929 amendment was intended to apply only to preferences by assignments *in trust* for the benefit of creditors, but that as worded it covers all preferences and is consequently void under the "one subject" rule. The first clause of the amendment saves from the provisions of Sec. 101 preferences by partial assignment[2] for the benefit of creditors or preferences "by other means." This is to say that the Act, as amended, permits preferences of particular creditors by means other than those which place the property in trust for the benefit of creditors. This is the basis of the Bank's claim that the amendment is broader than the subject since it covers all preferences, even those not accomplished by trusts. We are not persuaded that this argument overcomes the conclusion we have reached. It is clear what the legislature intended to do by the first clause. And the second clause limits what may be done with respect to either the partial assignments or the "other means" used in preferring creditors.

■ The Bank argues that the second clause of the amendment should have been placed elsewhere, that is, in a separate statute, as part of the Corporation Act, or as part of a fraudulent conveyances act. The legislature repealed the existing Corporation Act in 1929, but removed the substance of the last clause and placed it in Title 17–101. Why it did so is beyond the scope of our inquiry. But by repealing the existing Corporation Act and relocating the clause, the legislature indicated a conscious purpose to limit the first clause

---

2. Partial assignment means, in Indiana law, assignment of less than all the debt- or's property for the benefit of less than all of his creditors.

of the 1929 amendment so as to modify the common law rule, the main part of which is codified in the first clause. We cannot see that the second clause in a separate statute covering the subject of preferences would give better notice to an interested person or be easier for him to find. Nor do we think that placing it under fraudulent conveyances would lead him to find the clause more readily. In either of these alternatives, there would have to be reference to Title 17–101.

After the court entered its judgment on January 25, 1968, plaintiff moved for reconsideration of the findings, conclusions and judgment. The court's memorandum considered "the main thrust" of the motion to be that federal courts have no authority to declare state statutes violative of state constitutions under which they were enacted and that the federal courts must accept them as valid. The district court's opinion was that it had the power to decide the constitutional question, and that it should not abstain.

There is no merit in the argument that the court lacked power to declare the amendment unconstitutional. It had the power to decide this case, brought under the Bankruptcy Act, by applying Indiana law. Whether the court should exercise the power, or abstain, rests in its discretion. We have not been shown that the district court abused its discretion in not abstaining in this case. Since the constitutional question was necessarily involved in determining the issues presented by the trustee's suit, we agree that the court had no alternative to making the decision with respect to the Indiana Constitution. The district court noted, as we do, that federal courts are reluctant to hold state legislative enactments unconstitutional, but it felt the necessity in justice to decide the case.

As the court found, the second clause of the exception to Title 17–101 has been in the Act for thirty-nine years, has never been tested or interpreted at the appellate level of Indiana

courts, no such case is now pending, nor, as far as the court was advised, is one contemplated. The transaction in this suit occurred five and a half years before the trial, and was litigated in the court for almost seventeen months. We find no abuse of discretion in the court's refusal to abstain.

For the reasons given, the judgment is reversed.