FRITZ ET UX. *v.* BOARD OF TRUSTEES OF TOWN OF CLERMONT, ETC., ET AL.

[No. 1069-S-247. Filed November 26, 1969.]

*Robert W. Geddes, Sheldon A. Key, Smith and Jones,* of counsel, *Key, Latham, McClure & McClure,* of counsel, all of Indianapolis, for appellants.

*Jack H. Rogers,* Indianapolis, *Roberts & Ryder,* of counsel, Indianapolis, for appellees.

ARTERBURN, J.—The sole question presented by this appeal is whether appellants were deprived of due process of law by the failure of appellees to give appellants adequate notice of sewer assessment proceedings affecting certain property owned by appellants.

Summary judgment was entered in this case for the appellees, following a motion therefor by each of the parties. The facts are not in dispute.

On January 18, 1968, the Board of Trustees of the Town of Clermont passed Resolution 1968-1 which provided for the installation, within the Town of Clermont, of a sanitary sewer system. The resolution provided that the area to be assessed to pay for said system was all the property within the corporate limits of the Town of Clermont. Further provision was made for a hearing to be held on February 5, 1968, at which time remonstrances could be heard. Notice of the resolution and hearing was posted at five locations in the Town of Clermont and was also published in two newspapers as provided for in Burns' Ind. Stat. Anno. § 48-3950.

At the February 5, 1968, hearing no remonstrators appeared nor were any remonstrances filed. Thus, pursuant to Burns' Ind. Stat. Anno. § 48-3952, Resolution 1968-2 was passed which confirmed the prior resolution. On May 17, 1968, Resolution 1968-3 was passed pursuant to Burns' Ind. Stat. Anno. § 48-3958. This resolution provided for filing the assessment roll and further provided for a hearing on May 31, 1968, for the purpose of filing remonstrances. Notice of the hearing on the assessment roll was posted at five locations in the Town of Clermont and published in two newspapers pursuant to Burns' Ind. Stat. Anno. § 48-3958.

At the May 31, 1968, hearing no remonstrances were filed or presented. Thus, Resolution 1968-4 was passed which confirmed and made final the assessment roll. This resulted, pursuant to Burns' Ind. Stat. Anno. § 48-3960, in a final and conclusive assessment against appellants' property located within the corporate limits of the Town of Clermont of $17,827.44. This statute, Burns' Ind. Stat. Anno. § 48-3960, reads in pertinent part as follows:

> "The decision of the board as to all benefits shall be final and conclusive on all parties: Provided, That any owner of any lot or parcel of land assessed, shall have the right to take an appeal to the circuit or superior court of the county in which the city or town is located, *provided the owner has filed a written remonstrance with the board."* (Emphasis added.)

Here, as noted above, no remonstrances were filed.

It is uncontradicted that the appellants received no actual notice and further, for the purposes of summary judgment, that appellees knew the appellants' names and addresses or in any event could have easily ascertained the same, since the appellants' names and address were on the assessment roll. It is also not disputed that appellees followed all of the statutory provisions regarding notice of the sewer project and the assessments. The appellants nonetheless contend that the published and posted notice failed to afford them actual notice and therefore due process of law under the circumstances. We believe the notice given under these circumstances was not a notice reasonably calculated to apprise interested parties of the proceedings which were intended to affect the property of appellants specifically.

From the practicalities of the situation we can reach no other conclusion than that fairness and justice require that the appellant in this case should have had personal notice of the proposed action with reference to the sewer project. Even the minimum in that respect would require a letter through the mail, addressed personally to the property owners affected by the special assessments.

The notice given in the newspapers and posted in every instance was general in nature. It informed the public generally, and those who might see or read it, of the passage of the resolution for construction of a sewage system affecting land within the corporate limits of the town.

1. It did not contain the name of the plaintiff herein, as affected thereby, nor give the name of a single individual to be affected by such improvement.

2. It did not set out the proposed cost of the construction nor the individual assessments to be made against any particular piece of property affected thereby as to benefits of improvements.

3. It did not describe any particular real estate or lot number affected thereby within the area.

4. It did say that a map was on file of the proposed sewer system, along with plans and specifications and engineer's estimates of the cost with the clerk-treasurer of the Town of Clermont.

In other words, to be blunt, the public generally was notified that some public project relating to sewers was proposed by the Board of Trustees, and anyone interested should go to the clerk-treasurer's office and look over the plans and specifications and see if one's name is included therein; or, delving into the real estate descriptions, see if one's property might be included therein and assessed for any benefits or damages.

We are all aware that "legal publications" in newspapers are a poor and inadequate method of notification, and can only be used as a substitute where actual notice from a practical point of view cannot be given. A notice in a legal publication or by posting, without naming the persons involved and affected by a proceeding and without describing the real estate affected, is the poorest type of notice. This type of notice places on the party affected the burden of notifying himself, rather than placing the burden

of notice where it should be, namely on the party seeking to levy an assessment or lien against property.

The appellees' position here, if accepted as the law, would cause us great concern. We are fearful of a rule which would permit boards and commissions and other officials quietly and sometimes, it might be urged, rather secretly, to enter a resolution which takes a person's property or fixes an assessment against the same without giving such person the opportunity to question the taking or the amount of the assessment because he had no actual notice of what was taking place. A party should not have the burden of continually searching the public records to see whether any proceeding taking place directly involves his property. The state and public corporations employ engineers for public projects affecting private property to draw up the plans and specifications in connection therewith. With such help there is no practical reason why a private property owner should not be actually notified and be given an opportunity to defend his personal and individual rights in his property at that stage in the proceedings where it is sought to affect such property directly and specifically.

Appellees rely upon *Temperly* v. *City of Indianapolis* (1920), 189 Ind. 292, 127 N. E. 149, for the proposition that notice by publication was sufficient under the circumstances such as we have here. We feel it necessary to examine this case in view of a more recent line of decisions by the Supreme Court of the United States.

In *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865, a statute authorizing notice by publication to beneficiaries on the application for judicial settlement of accounts was reviewed. In holding that the beneficiaries whose names and addresses were known were not accorded due process of law without personal notice, the court said:

"As to known present beneficiaries of known place of residence, however, notice by publication stands on a differ-

ent footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability, notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

In *Walker* v. *City of Hutchinson* (1956), 352 U. S. 112, 77 S. Ct. 200, 1 L. Ed. 2d 178, the Supreme Court dealt with a situation where only notice by publication was given in a condemnation action. In speaking of *Mullane, supra,* the court stated:

"That case establishes the rule that, if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests."

The court went on to hold:

"Measured by the principles stated in the Mullane case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In Mullane we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value."

The next of the line of cases is *Schroeder* v. *City of New York* (1962), 371 U. S. 208, 83 S. Ct. 279, 9 L. Ed. 2d 255, wherein the city sought the right to divert a river upstream from appellant's summer home. Although appellant's name and address could easily have been ascertained from tax rolls and deed records, no attempt was made to notify appellant except by publication and posting. In holding that the notice did not measure up to due process of law the court stated:

"The general rule that emerges from the Mullane case is that notice by publication is not enough with respect to a

person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."

Appellees argue that the above line of United States Supreme Court cases may be distinguished since the *Schroeder* case was basically an eminent domain case and has no application to a proceeding for the assessment of costs of public improvements. We can see no basis for any distinction when any interest in private property is to be taken by condemnation proceedings or otherwise. If there were any doubts along these lines it was, in our opinion, dispelled by the action of the Supreme Court in *Wisconsin Electric Power Co.* v. *City of Milwaukee* (1956), 352 U. S. 948, 77 S. Ct. 324, 1 L. Ed. 2d 241. The city there decided to improve a street upon which the plaintiff owned abutting property. The costs were assessed against the abutting properties upon the basis of benefit. Notice was given by publication only. An evenly divided Supreme Court of Wisconsin affirmed the judgment of the circuit court upholding the adequacy of the notice. *Wisconsin Electric Power Co.* v. *City of Milwaukee* (1953), 263 Wis. 111, 56 N. W. 2d 784.

The Supreme Court of the United States remanded the cause for consideration in view of *Walker* v. *City of Hutchinson* (1956), 352 U. S. 112, 77 S. Ct. 200, 1 L. Ed. 2d 178. On remand, the Supreme Court of Wisconsin held that notice by publication of the special assessments did not meet the requirements of due process. *Wisconsin Electric Power Co.* v. *City of Milwaukee* (1957), 275 Wis. 121, 81 N. W. 2d 298. After this decision the Wisconsin legislature amended the law relating to notice of special assessments to provide that in addition to publication or posting notice shall "be mailed to every interested person whose post-office address is known, or can with reasonable diligence be ascertained . . ." Wis. Stat. Anno. § 66.60 (7), (L. 1957, c. 130, § 2).

In view of these more recent decisions we are constrained to hold that the 1920 decision in *Temperly* v. *City of Indian-*

*apolis* (1920), 189 Ind. 292, 127 N. E. 149, can no longer be considered the law in this state. In this day and age the affairs of the business world are largely conducted through the mails. It is not too much to ask that a party be given notice by mail where his address is known or can be reasonably ascertained. In the present situation reference to the tax rolls is all that would be required to disclose the mailing addresses of interested persons. Any inconveniences in this regard are slight in view of our concepts of fundamental fairness. This approach is much more realistic than the supposition that each person will daily read the fine print at the back of the paper or every posted notice he sees to determine whether he has been or may be assessed.

We note also that the above mentioned line of United States Supreme Court cases has caused other jurisdictions to update their concept of due process and hold that publication alone does not afford due process where the names and addresses of interested persons are known or are easily ascertainable. *Smith* v. *City of New York* (1968), 290 N. Y. S. 2d 306; *City of Houston* v. *Fore* (1967, Tex.), 412 S. W. 2d 35; *Ridenour* v. *County of Bay* (1962), 366 Mich. 225, 114 N. W. 2d 172; *Pratt* v. *Water District No. 79* (1961), 58 Wash. 2d 423, 363 P. 2d 816; *Meadowbrook Manor* v. *City of St. Louis Park* (1960), 258 Minn. 266, 104 N. W. 2d 540. See also: 3 Yokley, *Mun. Corp.,* § 555, p. 435.

We point out that there are two types of hearings in proceedings of this character which should be distinguished. There is the hearing that normally takes place to determine the pros and cons or the merits of the projects as a whole as a public improvement. Then there is the second step where the public authority seeks to reach and affect certain specific property, normally real estate, against which a special assessment and lien is to be applied, or in some instances, as in condemnation proceedings, the property itself is to be taken. In the first instance, where the hearing

is for the benefit of the public generally, a notice of a general nature to the public in general would seem to suffice.

> ". . . There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land . . ." *Utley* v. *City of St. Petersburg* (1934), 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155; 48 Am. Jur., *Special & Local Assessments,* § 169.

When, however, the proceedings reach the point where it affects specific pieces of property owned by specific individuals, the intentions of the public authority to seize or take an interest or make an assessment against such property should be made known to the individual affected by means which are reasonably calculated to give such person actual notice.

We do not mean to say the statute here involved in its operation is unconstitutional in cases where personal notice is not reasonably possible. It is not unconstitutional on its face. We do say, however, that where personal notice is reasonably possible under the circumstances, the authorities are required to take steps which are reasonably calculated to give actual notice to those persons whose property is specifically affected in order to allow them to remonstrate and object within a reasonable time. This notice need not necessarily be by judicial process but, as we have suggested before, notice through mail with return address indicated thereon, would suffice.

This is not a jurisdictional matter, but rather a procedural matter which, under certain circumstances, may be waived or lost by laches where a party who is entitled to actual notice has permitted the time to run and failed to act promptly after he has gained actual knowledge of the proceedings which affect his property directly. This situation occurs *at least* where such person has received a notice of the amount of assessment which is due and owing and there-

after takes no prompt action to resist the payment of the same. Equity aids the vigilant—not those who slumber on their rights.

In this case the appellant, as soon as he was aware of the assessment to be made against his property, acted promptly and brought this action to enjoin the enforcement of the assessment for approximately $18,000.00. It is admitted he had no actual notice at the time of the hearing that such assessment was to be made against his property. Fairness and justice require that he should be given notice by means which are calculated to reasonably apprise him of the fact that he and his property are involved and that he be given an opportunity to resist the attempt of the public authorities to enforce their will to take his property without an opportunity to be heard.

The judgment is reversed, and the trial court is directed to enter judgment for the appellants.

DeBruler, C.J., and Hunter, Jackson and Givan, JJ., concur.

NOTE.—Reported in 252 N. E. 2d 567.