367 N.E.2d 596 (1977)
FIRST SAVINGS AND LOAN ASSOCIATION OF CENTRAL INDIANA, Appellant (Plaintiff below),
v.
Alfred E. FURNISH and D. Louise Furnish, Appellees (Defendants below).
No. 2-476A162.
Court of Appeals of Indiana, Second District.
September 19, 1977.
Charles H. Dickmann, James E. Freeman, Jr., Sansberry, Dickmann, Dickmann & Freeman, Anderson, for appellant.
*597 John D. Wagoner, Wagoner & Cochran, Marion, Patrick J. Roberts, Cole, Haig & Roberts, Peru, for appellees.

CASE SUMMARY
BUCHANAN, Judge.
Plaintiff-appellant First Savings & Loan Association of Central Indiana (First Savings), as a mortgage lienholder, appeals from the granting of Summary Judgment in favor of Appellees, Alfred E. and D. Louise Furnish (Furnish) quieting title in Furnish as tax sale purchaser, claiming the judgment was contrary to the evidence and pre-sale notice by publication was in violation of the Due Process Clauses of the United States and Indiana Constitutions.[1]
We affirm.

FACTS
The facts and evidence most favorable to the judgment of the trial court are:
On August 12, 1968, Donmar Realty Corporation (Donmar) executed a mortgage on land it owned in Grant County, Indiana, in favor of Twin City State Bank (Twin City), which then recorded the mortgage in the Recorder's office of Grant County and subsequently assigned it to First Savings of Madison County, Indiana, on September 13, 1968. First Savings recorded the assignment in Grant County on October 2, 1968.[2]
Some time after the assignment, Donmar, the mortgagor, defaulted in its principal payments and also became delinquent in payment of real estate taxes. As a result the land, on August 14, 1972, was sold at a tax sale to Furnish after notice of the impending sale was sent to Donmar, the owner, by certified mail.[3] Notice was also posted on the Grant County Courthouse and, pursuant to statute,[4] published in a newspaper of local circulation in Grant County for three consecutive weeks.[5] No notice was sent to First Savings.
The record indicates First Savings did not have actual knowledge of the real estate tax delinquency before the tax sale took place, but it is undisputed it had knowledge thereof during the period of redemption. In fact, on November 27, 1972, about three and one-half months after the sale, First Savings filed in the Grant Circuit Court an action to foreclose the mortgage naming Donmar (the original owner), Twin City (original mortgagee), and Furnish (tax sale buyer) as Defendants.
First Savings did not attempt to redeem the land pursuant to the right given lienholders by the statute then in effect,[6] and *598 title was conveyed[7] to Furnish on August 16, 1974.
After the action was venued to Miami County, Indiana, on March 9, 1973, and, following the subsequent failure by First Savings to redeem, Furnish filed, on December 24, 1974, a counter-claim against First Savings to quiet title to the real estate. On October 8, 1975, First Savings filed a Consolidated Motion for Declaratory Judgment[8] against the counter-claim of Furnish. Furnish responded by an oral Motion for Summary Judgment[9] and the trial court granted Furnish's motion.
This appeal followed.

ISSUES
Two issues[10] are presented for our disposition:
(1) Does First Savings have standing to raise lack of due process (constructive notice only) under the 14th Amendment to the United States Constitution and art. 1, § 12 to the Indiana Constitution?
(2) Does failure to give a mortgagee actual notice of a tax sale constitute a denial of due process?
PARTIES' CONTENTIONS  First Savings argues it has standing to assert lack of due process because it has suffered harm and, further, that the landmark decision in Mullane v. Hanover Bank & Trust Co.[11] requires that a mortgagee whose lien is recorded must be given actual notice prior to the sale of the mortgaged land for tax delinquency.
Furnish responds that First Savings lacks standing to raise the constitutional issue as First Savings had actual knowledge of the sale within the redemption period and therefore was not harmed. Alternatively, Furnish argues that the statute pertaining to notice[12] is reasonably calculated to apprise any interested party of the pendency of the sale, thus satisfying the requirements of due process.

DECISION

ISSUE ONE
CONCLUSION  First Savings has standing to raise the constitutional question of lack of due process.
A threshold question is raised by Furnish's assertion that First Savings has no right to raise the constitutional question inasmuch as it was not harmed because the property could have been redeemed during the period of redemption.
It is true that standing to raise a constitutional question is determined by the existence of harm which occurred because of the operation of the statute or act which is asserted as unconstitutional. Board of Commissioners of Howard County v. Kokomo City Plan Commission (1975), Ind., 330 N.E.2d 92; Lamb v. State (1975), Ind., 325 N.E.2d 180; State v. Clark (1966), 247 Ind. 490, 217 N.E.2d 588; Wells v. State (1976), Ind. App., 351 N.E.2d 43.
*599 Harm is demonstrated, says First Savings, and we agree, because by redeeming after the sale a greater sum of money would have to be paid, consisting of penalties and interest.[13]
That such payments of penalties and interest constitute harm is consistent with the case law on this subject. Johnson v. United States, 422 F. Supp. 958 (N.D.Ind. 1976); Cottongim v. Congleton (1964), 245 Ind. 387, 199 N.E.2d 96; Pennington v. Stewart (1937), 212 Ind. 553, 10 N.E.2d 619. And further, a determination of the constitutional question is necessary to a complete determination of the rights of the parties. Shigley v. Whitlock, supra; Garcia v. Slabaugh, supra; Saloom v. Holder, supra note 13.

ISSUE TWO
CONCLUSION  Due process does not require that a mortgagee be given actual notice of a tax sale.
The precise question is whether due process entitles a mortgagee to actual notice of a tax sale rather than constructive notice (publication).
The trial court concluded, properly, that Indiana statutes relating to the sale of tax delinquent real estate contemplate a mortgagee only receiving constructive notice (posting and publication).
The general notice statute provides that notice be given by publication and posting without reference to whom it shall apply:
To the list of real property described in §§ 601 [6-1-56-1] shall be attached a notice stating that each parcel of real property listed will be sold at public auction to the highest bidder; that said sales shall be an amount not less than the sum of delinquent special assessments and taxes (whether or not delinquent for more than fifteen months), taxes and special assessments due and payable in the year of the sale (whether or not delinquent), penalties which may be due thereon, or due from the owner thereof with respect thereto, and five dollars [$5.00] costs; that said sale shall be conducted at a designated place in the courthouse or on the courthouse grounds; and that said sale shall be commenced at 10:00 A.M., on the second Monday in August next thereafter and continue from day to day until all the real property is sold.
The County Auditor shall cause a copy of the aforesaid notice to be posted in a public place of posting in the courthouse at least three [3] weeks before the date of sale, and shall also give notice by publication once each week for three [3] consecutive weeks before such sale. The expense of such printing shall be paid out of the County general fund without prior appropriation therefor.
The County Auditor shall, on or before the day of the sale, attach a copy of such notice to the list required by § 601 and certify on this record the manner and length of time the notice was printed and posted. [Acts 1963, ch. 280, § 602, p. 426.] (Emphasis supplied) (hereinafter referred to as the general notice statute). IC 6-1-56-2 [64-2256].
But significantly the very next section specifically requires actual notice be given by certified mail to the "owner or owners." No reference is made to any other interested person:
6-1-56-3 [64-2257]. Notice of sale to owner.  In addition to the notice required to be given by §§ 602 [6-1-56-2], the County Auditor shall send a notice of such sale to the owner or owners of such real property listed for sale for delinquent taxes or special assessments, at the last known address by certified mail at least 21 days prior to the date set for the sale. Such notice shall be in a form prescribed by the State Board of Accounts. The County Auditor shall, on or before the day of sale, certify on his record that such notice was mailed as herein provided. *600 [Acts 1963, ch. 280, § 603, p. 426]. (Emphasis supplied) (hereinafter referred to as the special notice statute).
And then the statutory scheme of sale and redemption of tax delinquent real estate allows a lienholder, among other persons having an interest in real estate, the right to redeem:
6-1-57-1 [64-2276]. Redemption.  The owner, occupant, lienholder or any other person having any interest in real property sold pursuant to Article VI [6-1-56-1 - X-X-XX-XX] of this act may redeem the property sold at any time before deed is issued therefor by paying to the county treasurer the amount required by this article [6-1-57-1 - X-X-XX-XX] for redemption. [Acts 1963, ch. 280, § 701, p. 426]. (Emphasis supplied) (hereinafter referred to as the redemption statute).
Giving the words of these three statutes their "plain or ordinary and usual sense" as we are required to do, the plain implication is that only an owner of real estate is entitled to the actual notice of the special notice statute. IC 1-1-4-1; State ex rel. Bynum v. LaPorte Superior Court No. One (1973), 259 Ind. 647, 291 N.E.2d 355; Sutto v. Board of Medical Registration & Examination (1962), 242 Ind. 556, 180 N.E.2d 533; State v. Bress (1976), Ind. App., 349 N.E.2d 229; Jenkins v. Stotts (1976), Ind. App., 348 N.E.2d 57; Sekerez v. Youngstown Sheet & Tube Co. (1975), Ind. App., 337 N.E.2d 521.
The mortgagee is not forgotten; he is given the right of redemption, indicating the legislature considered the mortgagee's interest sufficient to be entitled only to redemption rights.
Considering the general notice section and the special notice section in pari materia so as to give effect to each, New York Central R. Co. v. Public Service Comm. of Indiana (1957), 237 Ind. 544, 147 N.E.2d 547; Porter Memorial Hospital v. Harvey (1972), 151 Ind. App. 299, 279 N.E.2d 583, the obvious intent of the legislature is that only "owners" are entitled to actual notice. That a mortgagee is not an owner is well established by Indiana law.[14]
And so First Savings is confronted with a series of statutes which only provide for actual notice to "owners" and constructive notice to all others. But, says First Savings, failure to provide actual notice to a mortgagee of a tax sale is a deprivation of property without due process.
Thus, having successfully leaped the hurdle of standing, the next hurdle, demonstration of lack of due process, remains in the constitutional obstacle course.
Every statute enacted by the Legislature of this state is clothed with the presumption of constitutionality. This presumption continues until the contrary is clearly shown. Sidle v. Majors (1976), Ind., 341 N.E.2d 763. To overcome this presumption the party attacking the statute must make the constitutional defects readily apparent. Hanley v. State (1955), 234 Ind. 326, 126 N.E.2d 879. In Indiana, the standard of persuasion applied is "beyond a reasonable doubt." Clark, supra; Vale v. Gary National Bank, 406 F.2d 39 (7th Cir.1969).
First Savings leans hard on the landmark case of Mullane v. Hanover Bank & Trust Co.,[15] and particularly this language:
As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability, notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its *601 pendency. 339 U.S. at 318, 70 S.Ct. at 659.
First Savings argues that "interested parties" does not distinguish between owners and non-owners in determining the type of notice given, i.e. "interested parties."
However, Mullane concerned itself with notice to owners and beneficiaries of the trust whose names and addresses were known.
Subsequent cases decided by the United States Supreme Court and various State Courts considering the adequacy of notice by publication in various types of situations have been restricted to owners of the affected property. See Schroeder v. City of New York (1962), 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255; Walker v. City of Hutchinson (1956), 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178; Wisconsin Electric Power Co. v. City of Milwaukee (1956), 352 U.S. 948, 77 S.Ct. 324, 1 L.Ed.2d 241; Ridenhour v. County of Bay (1962), 366 Mich. 225, 114 N.W.2d 172; Meadowbrook Manor, Inc. v. City of St. Louis Park (1960), 258 Minn. 266, 104 N.W.2d 540.
After Mullane, Indiana, like other states, amended existing statutes to conform to this basic due process requirement. But the principle of actual notice has never been extended to any class other than "owners" in Indiana.
Fritz v. Board of Trustees of Town of Clermont (1969), 253 Ind. 202, 252 N.E.2d 567, is in keeping with this limitation. It held that property owners were entitled to actual notice before special assessments could be effective. Admittedly, the court stated:
We do say, however, that where personal notice is reasonably possible under the circumstances, the authorities are required to take steps which are reasonably calculated to give actual notice to these persons whose property is specifically affected in order to allow them to remonstrate and object within a reasonable period of time. 253 Ind. at 211, 252 N.E.2d at 571, 572. (Emphasis supplied)
That Fritz should not be interpreted so broadly as to include lienholders in addition to owners is this wording:
When, however, the proceedings reach the point where it affects specific pieces of property owned by specific individuals the intentions of the public authority to seize or take an interest or make an assessment against such property should be made known to the individual affected by means which are reasonably calculated to give such person actual notice. 253 Ind. at 211, 252 N.E.2d at 571. (Emphasis supplied)
Reading the opinion as a whole we can discover no intent to include all interested persons within the actual notice requirement.
Our research discloses only one case extending Mullane to mortgagees. Laz v. Southwestern Land Co. (1964), 97 Ariz. 69, 397 P.2d 52. It is not persuasive, being founded largely on vague and general statements of public policy.
It is understandable why actual notice has not been extended to mortgagees. Most mortgagees are in the business of lending money, and as professional money lenders prudence requires them to be aware of conditions involving their collateral. Normally they can be expected to protect their interest by keeping records of the mortgagor's discharge of his obligations, such as payment of taxes, insurance, principal and interest installments.
Also, we are aware that there is a vintage Indiana case, Baldwin v. Moroney (1910), 173 Ind. 574, 91 N.E. 3, which specifically categorizes a mortgagee as a "non-owner" unless he is in possession of the real estate.
In sum, First Savings presents no applicable authority overcoming the presumption of constitutionality of the statutes in question, and thereby founders in the constitutional obstacle course.
Judgment affirmed.
WHITE and LYBROOK, JJ., concur.
NOTES
[1] U.S.Const. amend. XIV, § 1; Ind.Const. art. 1, § 12.
[2] The mortgage assignment, part of a blanket assignment recorded in Mortgage Record 68, page 1616, reads in part:

ASSIGNMENT OF MORTGAGES
For value received, the undersigned Twin City State Bank, hereby sells, transfers, acts over and assigns to the First Savings and Loan Association of Madison County, its entire right, title, and interest in and to each and all of the following described bona fide mortgages... .
[3] Pursuant to IC 6-1-56-1 & 2.
[4] Id.
[5] The record does not disclose the name of the newspaper in which the notice was published, the dates of publication, nor the wording of the publication.
[6] IC 6-1-57-1 allowed a lienholder to redeem by paying to the County Treasurer an amount as provided by IC 6-1-57-2, which read:

Amount required for redemption.  The amount required for redemption shall be as follows:
1. If redeemed within six (6) six months from date of sale, the purchase price named in the certificate of sale together with ten percent (10%) of such amount in addition; or
2. If redeemed after six (6) months and within one (1) year from the date of sale, the purchase price named in the certificate of sale, together with fifteen percent (15%) of such amount in addition; or
3. If redeemed after one (1) year from date of sale, the purchase price named in the certificate of sale, together with twenty-five percent (25%) of such amount in addition.
In addition to the above, the amount required for redemption shall include all taxes and special assessments charged to the real property subsequent to those for which it was sold which have been paid by the purchaser, together with six percent (6%) interest on the taxes and special assessment. At any time after redemption, upon presentation and surrender of this certificate of sale to the County Auditor, said Auditor shall issue a warrant on the County Treasurer to pay the person surrendering the certificate the amount received by the Treasurer for redemption. The County Auditor shall endorse the certificate and preserve it as a public record. In case the certificate of sale is lost, the payment may be made to the proper person in the manner herein provided upon the County Auditor being fully satisfied by due proof of the existence of such certificate. (Acts 1963, ch. 280, § 702, p. 426.)
[7] IC 6-1-57-3.
[8] Ind. Rules Procedure, Trial Rule 57.
[9] TR 56. The trial court had, on July 3, 1975, entered Summary Judgment against Twin City for First Savings, holding that the assignment of the promissory note, and the mortgage securing it, to First Savings had been made with recourse.
[10] As First Savings appeals from a negative judgment, no error is presented by its assertion that the judgment was contrary to the evidence. Smitley v. Egley (1973), 156 Ind. App. 10, 294 N.E.2d 640; and cases cited therein.
[11] (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.
[12] Note 4 supra.
[13] See IC 6-1-57-2, supra note 6. Further, resolution of a constitutional issue requires a finding that reaching the constitutional question is absolutely necessary to a determination of the case. Shigley v. Whitlock (1974), Ind. App., 310 N.E.2d 93; Garcia v. Slabaugh (1974), Ind. App., 308 N.E.2d 714; Saloom v. Holder (1973), Ind. App., 304 N.E.2d 217.
[14] A mortgage is a lien, a mere security for a debt. The mortgagee has no title to the land mortgaged. Indiana Department of Revenue v. Colpaert Realty Corp. (1952), 231 Ind. 463, 109 N.E.2d 415. He is not an "owner" unless he is in possession of the mortgaged land and, as such, is not entitled to notice by personal service. Baldwin v. Moroney (1910), 173 Ind. 574, 91 N.E. 3.
[15] Note 11 supra.