**David A. SLEBODNIK et al., Appellants (Plaintiffs Below),**

v.

**CITY OF INDIANAPOLIS, Indiana, et al., Appellees (Defendants Below).**

**No. 1–480A103.**

Court of Appeals of Indiana,
First District.

Nov. 26, 1980.

Rehearing Denied Jan. 7, 1981.

---

Douglas E. Cregor and John M. Cregor, Dongus, Cregor & Messick, Indianapolis, for appellants.

Richard E. Aikman, Jr., Stewart, Irwin, Gilliom, Fuller & Meyer, Richard S. Ewing and James B. Burroughs, Indianapolis, for appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Plaintiffs–appellants, David A. Slebodnik et al. (Taxpayers), appeal from the granting of a motion for summary judgment in favor of defendants–appellees, City of Indianapolis et al. (City) on the sole issue of notice. We affirm.

## FACTS

On March 15, 1978, more than two thousand property owning Taxpayers of Marion County, Indiana, brought suit to enjoin the implementation of Resolution No. 2261–1977 of the Board of Public Works of the City of Indianapolis and to have it declared invalid and rescinded. The City–County Council had approved the resolution on February 13, 1978, as General Resolution No. 1, 1978. Said resolution incorporated Taxpayers' lands into the Indianapolis Sanitary District pursuant to I.C. 19–2–14–7 and made the properties subject to a special tax for the retirement of the bonded indebtedness of the Indianapolis Sanitary District. According to evidence stipulated by the parties, the taxes actually levied ranged from approximately $10 to $200 per parcel of real estate, or from between 27 and 28 cents per $100 of valuation, with most parcels being taxed at the lower end of the range. Both sides moved for summary judgment on the issue of notice. The trial court found in favor of the City.

## ISSUE

The only issue presented for our review is whether or not notice solely by publication as provided by I.C. 19–2–14–7 in this case violates the requirements of due process of law guaranteed by both the Federal and the Indiana constitutions. We hold that it does not.

## DISCUSSION AND DECISION

In appeals based on the granting of a motion for summary judgment, our efforts are directed toward ascertaining the existence of a genuine issue of fact. In the absence of such issue here, we direct our

attention to whether or not the appellee is entitled to judgment in his favor as a matter of law. Ind.Rules of Procedure, Trial Rule 56; *State Board of Tax Commissioners v. Oliverius,* (1973) 156 Ind.App. 46, 294 N.E.2d 646, *transfer denied.*

In this case all parties agree that notice of the proceedings resulting in the Indianapolis–Marion County Council's approval of General Resolution No. 1, 1978, was published in strict compliance with I.C. 19–2–14–7 [1] and that publication is all that is required

1. Ind.Code 19 2- 14-7: Sanitary districts; procedures for incorporation of territories upon resolution

"Upon taking effect of this act all the territory included at any time within the corporate limits of any such city and all the territory of any incorporated town lying within the corporate boundaries of any such city and any territory, town, addition or platted subdivision, or unplatted lands, lying outside the corporate limits of any such city, which have been taken into the sanitary district of such city, in accordance with the provisions of any prior act, or any territory incorporated into such district at any time under the provisions of any other act, now or hereafter in effect, and the sewage or drainage of which discharges into or through the sewage system of such city, shall become and constitute a sanitary district for the purpose of providing for the sanitary disposal of the sewage of such district in such manner as to protect the public health and prevent the undue pollution of rivers, streams and water courses and other waters, and thereafter said sanitary district, as so constituted, shall be deemed duly established under and subject to the provisions of this act.

"Upon request, by a resolution adopted by the common council of any other city, or by the board of trustees of any town, or by the application in writing of the majority of the resident freeholders in a platted subdivision, or of the owners of any unplatted lands not within the boundaries of an incorporated city or town, and which city, town, platted subdivision, or unplatted lands, is or are located within the county in which any such city is situated, said board of sanitary commissioners, by adopting a resolution therefor, may incorporate all, or any portion of, the area of such city, town, platted subdivision, or unplatted lands, into said sanitary district. Any such request or application shall be signed and certified as correct by the secretary of the common council, or board of trustees, or resident freeholders, or landowners making the same and the original thereof shall be preserved in the records of said board of sanitary commissioners. Such resolution of said board, so incorporating any such area in the sanitary district, shall be in writing and an accurate description of the area so incorporated into the district shall be set out therein. A certified copy of such resolution, signed by the president and secretary of the board, together with a map showing the boundaries of such district and the location of such additional areas, shall be delivered to the auditor of the county within which such district is located and shall be properly indexed and kept in the permanent records of the offices of such auditor.

"Further, upon request by ten (10) or more interested resident freeholders, in any such aforesaid platted or unplatted territory, said board of sanitary commissioners may define the limits of an area, within the county and including the property of said requesting freeholders, which is to be considered as a unit for inclusion, then or thereafter, into said sanitary district. Notice of the defining of such unit or area by said board, and notice of the location and limits thereof, shall be given by one (1) publication in a newspaper of general circulation, published in the English language, in such city. Thereafter, and upon request, in the manner provided above, by a majority of the resident freeholders in said area, the same may be incorporated into said sanitary district. The resolution of the board so incorporating such area into said sanitary district and a map thereof shall be made and filed in the aforesaid manner.

"The board of sanitary commissioners, on its own initiative, whenever any territory, by its contour and watershed, or by reason of the extension of any sewers by such city, or by any department thereof, is capable of draining sewage into or connecting with said sanitary system, may incorporate any or all of such territory, whether platted or unplatted, into such sanitary district by adopting a resolution to that effect, describing the reason it is to be so included, and a certified copy of such resolution shall be conclusive evidence in any proceeding that the territory therein described was so properly incorporated and constitutes a part of said sanitary district, subject to the provisions hereinafter set forth. Immediately after the passage of such resolution a notice of the same shall be published once each week for two (2) consecutive weeks in a daily newspaper of general circulation published in the English language in any such city, and shall state the time and place for a public hearing thereon, at a time not earlier than fifteen (15) days from the date of the first publication. On or before the date and time of such hearing anyone affected may file in the office of such board a written remonstrance to having his lands so included. The board shall either confirm, modify, or rescind such resolution at or following such hearing. An appeal may be taken from such decision by one (1) or more persons deeming themselves aggrieved or injuriously affected, provided those so appealing have filed such written

by the statute. Taxpayers do not contend that the statute is unconstitutional because it does not require notice by mail in all cases, but rather argue that notice by publication under the circumstances was inadequate because it was not reasonably calculated to inform them of governmental action which adversely affects their property interests. They claim that because their names and addresses were readily available to the City, both the United States and the Indiana constitutions entitle them to mailed notice. They base their contention on the decisions in *Mullane v. Central Hanover Bank and Trust Co.,* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (hereinafter denominated *Mullane)* and *Fritz v. Board of Trustees of Town of Clermont,* (1969) 253 Ind.

202, 252 N.E.2d 567 (hereinafter denominated *Fritz,* I ).[2] The City, of course, contends that notice by publication as required by the statute was adequate under both the *Mullane* and *Fritz* decisions.

In *Mullane* the United States Supreme Court held that notice by publication to beneficiaries of a common trust fund upon application for judicial settlement of accounts pursuant to a New York Banking statute was inadequate where many of the beneficiaries lived outside of New York City and where the names and addresses of the beneficiaries were known and readily available. The Court there stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice

. remonstrances, as above provided, by filing their complaint therefor within thirty (30) days after the final decision of such board. Such appeal shall be governed by the general provisions therefor of the Acts of 1933, chapter 245, and of any acts amendatory thereof or supplemental thereto, including the following further provisions of this section. If the court should be satisfied upon the hearing of such appeal that less than 75 percent of the persons owning property in the territory sought to be so incorporated in such sanitary district have remonstrated, and that the incorporation of such territory into the sanitary district of such city will be for its interest and will cause no manifest injury to the persons owning property in such territory, and the court shall so find and adjudge, said incorporation shall take place. If the court shall be satisfied that 75 percent or more of the persons owning property in the territory sought to be so incorporated have remonstrated, then such incorporation shall not take place, unless the court shall further find from the evidence that unless so incorporated, the health and welfare of residents of such territory, or of adjoining lands, will be materially affected and that the safety and welfare of other persons and property will be endangered, in which event the court may adjudge that such incorporation shall take place, notwithstanding the remonstrances. Pending such appeal and during the time within which such appeal may be taken such territory sought to be so incorporated shall not be deemed a part of the sanitary district. Upon the determination of such appeal the judgment shall particularly describe the resolution upon which the appeal is based and it shall be the duty of the county clerk forthwith to deliver a certified copy of such judgment to the secretary of the board of sanitary commissioners, who shall record the same in the minute book of the board and make a cross reference to the page thereof upon the

margin where such original resolution was recorded. In case a decision is adverse to such an incorporation, no further proceedings shall be taken by the board to incorporate any such territory within the sanitary district for a period of one (1) year after the rendition of such judgment.

"This section shall be deemed supplemental to all other similar provisions in any other statute, and shall provide an additional or an alternative method of effecting any such changes in such aforesaid sanitary district. Whenever any bonds of such sanitary district are outstanding and until fully paid, all property included within any such district at the time such bonds were issued and sold shall remain subject to taxes levied thereon and for its proportion of such indebtedness until all such bonds are fully paid, notwithstanding any of such property and territory may have been at any time, after the issuance of such bonds, disannexed from such district. Any property and territory, so added to such district at any time shall, as a condition of the special benefits it thereby receives, become henceforth liable for its proportion of all taxes levied thereon to pay any and all bonds of such tax district which are either then outstanding, or are thereafter issued and sold. Such proportion of taxation shall be determined in the same manner as when any territory is annexed to a city, and the applicable statutes thereon are here included by this reference thereto. (Formerly: Acts 1917, c. 157, s. 5; Acts 1943, c. 107, s. 2; Acts 1949, c. 256, s. 2; Acts 1961, c. 26, s. 1)."

2. *Fritz,* I, was followed by *Fritz v. Board of Trustees of Town of Clermont,* (1973), 155 Ind. App. 180, 292 N.E.2d 258; *certiorari denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (hereinafter denominated *Fritz,* II).

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 399 U.S. at 314, 70 S.Ct. at 657.

In *Fritz*, I, the Indiana Supreme Court applied the *Mullane* holding to a case involving an assessment for a sanitary sewer system in the Town of Clermont. The applicable statutes (now embodied in Ind.Code 19–2–7–1 *et seq.*) provided for notice only by publication at each of the various stages of the proceedings up to and including the final assessment for construction of the sewers. There was no question but that all the statutory procedures regarding notice had been strictly complied with. The town had published notice of the initial hearing with regard to Resolution 1968–1 which was passed by the Board of Trustees and which created the sanitary district. No remonstrance having been made, Resolution 1968–2 confirming Resolution 1968–1 was passed. Later the Board passed Resolution 1968–3 which provided for the filing of an assessment role and for a hearing thereon. Notice of the hearing to be held regarding the assessment role was likewise published. Again no remonstrance was made, and Resolution 1968–4 making the assessment roll final was confirmed, resulting in a final assessment against the Fritzes' property of $17,827.44. The Fritzes brought an action seeking to enjoin enforcement of the sewer assessment, and the trial court granted a motion for summary judgment in favor of the Town of Clermont. On appeal the Indiana Supreme Court reversed, saying at 252 N.E.2d 568–569:

"We believe the notice given under these circumstances was not a notice reasonably calculated to apprise interested parties of the proceedings which were intended to affect the property of appellants specifically.

"From the practicalities of the situation we can reach no other conclusion than that fairness and justice require that the appellant in this case should have had personal notice of the proposed action with reference to the sewer project. Even the minimum in that respect would require a letter through the mail, addressed personally to the property owners affected by the special assessments."

The court went on, however, to distinguish two types of hearings involved in such proceedings and the requisite notice for each at 252 N.E.2d 571.

"We point out that there are two types of hearings in proceedings of this character which should be distinguished. There is the hearing that normally takes place to determine the pros and cons or the merits of the project as a whole as a public improvement. Then there is the second step where the public authority seeks to reach and affect certain specific property, normally real estate, against which a special assessment and lien is to be applied, or in some instances, as in condemnation proceedings, the property itself is to be taken. In the first instance, where the hearing is for the benefit of the public generally, a notice of a general nature to the public in general would seem to suffice.

" ' . . . There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land . . . .' *Utley v. City of St. Petersburg* (1934), 292 U.S. 106, 54 S.Ct. 593, 78 L.Ed. 115; 48 Am.Jur., Special & Local Assessments, § 169.

"When, however, the proceedings reach the point where it affects specific pieces of property owned by specific individuals, the intentions of the public authority to seize or take an interest or make an assessment against such property should be made known to the individual affected by means which are reasonably calculated to give such person actual notice."

Subsequently, in *Fritz*, II, (see footnote 2) the Court of Appeals upheld the trial court's judgment resulting in the $17,827.44 assessment against the Fritzes' property on the issue of benefits after proper notice and hearing requirements had been met.

Taxpayers argue that the case at hand involves a combination of the two types of proceedings distinguished in *Fritz*, I, because the incorporation of their properties into the sanitary district pursuant to I.C. 19–2–14–7 resulted in an immediate tax against their properties. They contend that such special taxes are assessments spread pro rata as to value for which they received no benefits and for which they were entitled to better notice than publication in the back pages of their local newspapers. They state that such notice was not reasonably calculated to inform them of the proceedings and thus prevented them from remonstrating against the resolution and its concomitant assessment. The City, on the other hand, contends that the hearing contemplated by I.C. 19–2–14–7 was purely of the first type analyzed in *Fritz*, I, and therefore that notice by publication was adequate since the proceeding involved a resolution incorporating additional territory into the sanitary district and was not a levy of assessments for specific improvements which might result at some later date because of the incorporation action. The City readily agrees that before a specific assessment in the nature of the one involved in both *Fritz* cases is made against the Taxpayers' properties for the construction of sewers pursuant to I.C. 19–2–16–1 *et seq.*, notice by mail concerning the proceedings thereon is statutorily, if not constitutionally, required. We agree with the City.

■ It is a general postulate that any analysis of procedural due process must begin with a determination of what process is actually due. It could not be suggested seriously that just because their names and addresses are readily available to the City in the records of the auditor's office all property owners in Marion County are automatically entitled to notice by mail before the City–County Council takes some action which results in a tax upon the property owners. Assessments for special improvements such as a sewer system involve procedural considerations which are applicable to the legitimate exercise of a government's sovereign power of taxation, and not its power of eminent domain. *See*, 14 E.

McQuillin, Municipal Corporations, *Special Taxation and Local Assessments*, § 38.01 (1970). Thus, the "taking" question is not properly raised here.

■ There is no legal principle of constitutional dimension requiring notice to be provided persons who will be affected by general tax legislation, but the Legislature may provide for such notice as it deems advisable, regardless of whether or not taxpayers think it is sufficient. *Board of County Commissioners of Lake County v. Sims*, (1969) 252 Ind. 531, 251 N.E.2d 9. The Legislature also has the power to create special taxing districts for the purpose of funding local improvements. *Johnson v. Board of Park Commissioners*, (1930) 202 Ind. 282, 174 N.E. 91; *Martin v. Ben Davis Conservancy District*, (1958) 238 Ind. 502, 153 N.E.2d 125; *Book v. Board of Flood Control Commissioners*, (1959) 239 Ind. 160, 156 N.E.2d 87; *Dortch v. Lugar*, (1971) 255 Ind. 545, 266 N.E.2d 25. Likewise, the method to be used in securing funds for a special public improvement, such as a park or sewer system, within a taxing district is for the Legislature to determine. *Johnson v. Board of Park Commissioners, supra; Department of Public Sanitation of Hammond v. Solan*, (1951) 229 Ind. 228, 97 N.E.2d 495. Indiana follows the general rule that no part of a taxing district may be made to pay a greater proportional tax than any other and no part of a district may be taxed without imposing a tax on the balance of the area. 16 E. McQuillin, Municipal Corporations, *Taxation*, § 44.21 (1979); *Johnson v. Board of Park Commissioners, supra*. Thus, upon incorporation of Taxpayers' properties into the Indianapolis Sanitary District they rightfully became subject to the same proportional tax as the rest of the property in the district. As pointed out by our Supreme Court in *Fritz*, I, due process of law either under *Mullane* or in Indiana does not require avenues of protest at every stage of proceedings, the consequences of which result in the imposition of a tax or assessment. According to *Fritz*, I, it is when the proceedings reach the point of affecting specific pieces of

property owned by specific individuals that the intentions of the public authority to make an assessment against such property should be made known to the individual affected "by means which are reasonably calculated to give such person actual notice." 252 N.E.2d at 571. We note that the type of assessment to which Taxpayers' properties became subject as a result of the City's action here was not a specific assessment for the actual construction of sewers as was involved in the two *Fritz* cases, but rather a general assessment applicable to each property pro rata as to value without the specific benefit as opposed to with the benefit. Taxpayers, thus, seem to us to have confused the levy of a general type of assessment for the general benefits derived from being included in the sanitary district in this case with the specific pro rata assessments for specific benefits which would be conferred upon the properties involved when sewer service is actually provided. The fact that no specific benefits were received in this case is irrelevant since the Fourteenth Amendment does not require that tax liability of the type involved here be measured by benefits derived. 16 E. McQuillin, Municipal Corporations, *Taxation*, § 44.21 (1979). The point at which Taxpayers may contest the benefits issue, as reflected in *Fritz*, II, is upon assessment for benefits actually provided. It is at this stage also that notice by mail has been specified by I.C. 19–2–16–1 *et seq.*

In the instant case the type of assessment involving the retirement of bonded indebtedness of the taxing corporation is similar to that to which property becomes subject when annexed to a city or other municipal corporation. The Legislature itself suggested this analogy by providing in the final sentence of I.C. 19–2–14–7 that "such proportion of taxation shall be determined in the same manner as when any territory is annexed to a city, and the applicable statutes thereon are here included by this reference thereto." (See footnote 1 above.) Taxpayers have cited us to no case and we have found no authority stating that any type of notice is constitutionally required when an annexation question is involved. Indeed, all authority in Indiana and elsewhere is to the contrary. *See, e. g., Board of County Commissioners of Lake County v. Sims*, (1969) 252 Ind. 531, 251 N.E.2d 9; 2 E. McQuillin, Municipal Corporations, *Corporate Boundaries and Subdivisions*, § 7.35 (1979).

> "The rationale behind a rule not requiring notice prior to the expansion by a municipality of its boundaries is that the adoption of an ordinance expressing the intent to expand is purely a legislative matter and constitutes a finding of public necessity and convenience by the governing authorities. Under such procedures due process is afforded with respect to notice and a hearing when the matter of adoption of the ordinance is submitted to a court for ratification and confirmation." 2 E. McQuillin, *supra*, at 466.

The same principle is equally true with regard to taxation uniformly assessed against all property in the same municipal corporation. *Board of County Commissioners of Lake County v. Sims, supra.*

It is important in this context to note that tax proceedings are not the same as judicial proceedings and that *Mullane*, which involved a judicial proceeding, limited its holding regarding notice specifically to proceedings which are to be accorded finality. (See the quotation from *Mullane* hereinbefore set out.) Our Legislature has, in fact, provided Taxpayers with a method for challenging a tax assessment such as the one involved in this case in I.C. 6–1.1–26–1(4)(ii).[3] This statute in effect post-

---

3. Ind.Code 6 1.1 26–1:

"A person, or his heirs, personal representative, or successors, may file a claim for the refund of all or a portion of a tax installment which he has paid. However, the claim must be:

(1) filed with the auditor of the county in which the taxes were originally paid;

(2) filed within three (3) years after the taxes are paid:

(3) filed on the form prescribed by the state board of accounts and approved by the state board of tax commissioners; and

(4) based upon one of the following grounds:
(i) taxes on the same property have been assessed and paid more than once for the same year;

pones the finality of the assessment until a judicial determination has been made. This is all that *Mullane* requires. In the context of *Fritz*, I, due process is satisfied when a hearing is provided before a specific assessment for a specific benefit becomes fixed as a charge against the land. This assessment has not yet been made in the case at bar.

We hold, therefore, that notice by publication as provided by I.C. 19–2–14–7 was adequate under due process considerations of both the United States and the Indiana constitutions in the proceedings which incorporated appellants' properties into the Indianapolis Sanitary District and pursuant to which certain increases in ad valorem general assessments were levied against appellants' properties.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.

(ii) the taxes, as a matter of law, were illegal; or

(iii) there was a mathematical error either in the computation of the assessment upon which the taxes were based or in the computation of the taxes. (Formerly: Acts 1975, P.L. 47, SEC. 1)."